## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

AARON NELSON et al.,

      Plaintiffs,

      v.

JEFFREY LANDRY, in his official capacity as Attorney General of the State of Louisiana, et al.,

      Defendants.

CIVIL ACTION NO. 3:20-cv-00837-JWD-RLB

### PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Plaintiffs, by and through undersigned counsel, submit this memorandum in opposition to the Motion to Dismiss filed by the Louisiana Department of Public Safety and Corrections ("DOC"), the Louisiana State Police ("LSP"), the Louisiana Office of Motor Vehicles ("OMV"), and the Louisiana Bureau of Criminal Identification and Information ("BCII"). ECF No. 45. For the reasons discussed below, the motion to dismiss should be denied.

### I.      Introduction and Background

Plaintiffs are seven individuals who were adjudicated delinquent in a Louisiana juvenile court of sex offenses allegedly committed when they were children. All Plaintiffs were between 13 and 16 years old when their offenses allegedly occurred. All Plaintiffs have completed the requirements of their custodial sentences. All Plaintiffs have reached adulthood and have not been convicted of any subsequent sex crimes as adults. Yet, under Louisiana's Sex Offender Registration Laws ("SORNA"), all Plaintiffs are required to remain on public, searchable sex offender registries *for the rest of their lives*.

In addition to remaining publicly branded as dangerous sex offenders, all Plaintiffs are required to comply with myriad requirements and restrictions for the rest of their lives—including frequent in-person reporting, annual registration fees, social media bans, the orange label of "SEX OFFENDER"

1

on mandatory identification cards and driver's licenses, ineligibility for certain types of jobs, extreme residency and presence restrictions, and hefty fines and even prison time for violations of these requirements and restrictions.[1]

SORNA's onerous and harmful panoply of lifelong requirements and restrictions has taken a damaging toll on nearly every aspect of Plaintiffs' lives. Plaintiffs have faced challenges in pursuing their educations, obtaining housing, finding and maintaining employment, meeting financial obligations, developing interpersonal relationships, and raising families. Plaintiffs continue to struggle with the stigmatizing lifelong punishment imposed by SORNA. Because of SORNA, Plaintiffs are forced to continue living in the shadow of childhood mistakes for the remainder of their lives.

On October 26, 2021, Plaintiffs refiled an amended complaint pursuant to 42 U.S.C. § 1983 alleging that SORNA—as applied to people who are subject to the registration laws based on juvenile adjudications—violates the United States Constitution. ECF No. 39 ("Amended Complaint"). Specifically, Plaintiffs allege violations of the right to be free from cruel and unusual punishment under the Eighth Amendment, the right not to suffer additional punishment than what was prescribed at the time of the offense under the Ex Post Facto Clause, the right to due process under the Fourteenth Amendment through the use of an irrebuttable presumption and the violation of the state right to reputation, the right to trial by jury under the Sixth and Fourteenth Amendments, the rights against compelled speech and the chilling of speech under the First Amendment, and the right to intimate association under the First and Fourteenth Amendments. *Id.* at 37-47. Plaintiffs seek injunctive and declaratory relief against the application of SORNA to them—people who were adjudicated as juveniles for offenses they committed as children. *Id.*

---

[1] A detailed summary of SORNA's restrictions and requirements is provided in the Amended Complaint. *See* ECF No. 39 at 7-25.

On November 8, 2021, Defendant Jeffrey Landry, in his official capacity as Attorney General for the State of Louisiana, filed an Answer to Plaintiffs' Amended Complaint. ECF No. 44. On November 9, 2021, the remaining Defendants—DOC, LSP, OMV, and BCII filed their motion to dismiss (for simplicity, "Defendants" in this memorandum refers to the four Defendants who filed the motion to dismiss). ECF No. 45. For the reasons set forth below, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss.

## II.    Argument

### A.    The Eleventh Amendment Does Not Bar Plaintiffs' Claims

#### i.    *Ex Parte Young* Creates an Exception to the Eleventh Amendment for Defendants Who Are Enforcing an Unconstitutional Law

There is a well-established exception to the Eleventh Amendment's prohibition of suit against the state or state actors in their official capacities: "'The Eleventh Amendment does not protect state officials from claims for prospective relief when it is alleged that the state officials acted in violation of federal law.'" *Delaughter v. Woodall*, 909 F.3d 130, 137 (5th Cir. 2018) (quoting *Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) and citing, *inter alia*, *Ex parte Young*, 209 U.S. 123, 155-56 (1908)).

In *Ex parte Young*, "[t]he Supreme Court carved out a narrow exception to the Eleventh Amendment[.]" *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citing *Ex parte Young*). "[W]here a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit." *Id.* (citing *Ex parte Young*, at 160). Thus, Plaintiffs may pursue claims against state officials in their official capacities to force compliance with the Constitution and federal law. *Fairley v. Stalder*, 294 Fed. Appx. 805, 812 (5th Cir. 2008) (citing *Ex parte Young*). *See also Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 254 (2011); *K.P.*, 627 F.3d at 124 ; *Doe v. Caldwell*, 913 F. Supp. 2d 262, 272 (E.D. La. 2012).

Here, Plaintiffs allege that Defendants are enforcing an unconstitutional law. *See* ECF No. 39 at 1-3, 48. In their requested relief, Plaintiffs ask this Court to declare that the application of SORNA

to Plaintiffs "violates Plaintiffs' rights under the United States Constitution" and enjoin Defendants from enforcing SORNA against Plaintiffs. *Id.* at 47-48.

> a.  ***Ex Parte Young* Applies Because Defendants Bear "Some Connection" to the Enforcement of the Statute**

The *Ex parte Young* exception applies in this case because Plaintiffs' Amended Complaint satisfies the "straightforward" requirements of "alleg[ing] an ongoing violation of federal law and seek[ing] relief properly characterized as prospective." *Delaughter*, 909 F.3d at 137 (citations and quotations omitted). Plaintiffs also sufficiently allege "some connection" between Defendants and the enforcement of SORNA—the disputed unconstitutional state act. *See Caldwell*, 913 F. Supp. 2d at 272. There is a connection because Defendants have the ability to act to enforce SORNA. *See Sonnier v. Crain*, 649 F. Supp. 2d 484, 493 (E.D. La. 2009).

> b.  **Defendants Are Involved in the Maintenance of the Registry, Have the Power to Arrest Those Who Violate SORNA, and Issue Identification Cards**

Defendants meet the "some connection" test by virtue of their direct involvement in maintenance and enforcement of the statute at issue. *See, e.g.*, *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 515 (5th Cir. 2017) (finding that the *Ex parte Young* exception applied because state defendants were clearly involved in the challenged scheme and its enforcement); *see also Meza v. Livingston*, 607 F.3d 392, 411-412 (5th Cir. 2010) (*Ex parte Young* applies where defendants play "integral roles" in determining parolee's supervision conditions in case involving the addition of sex offender status to parolee's supervision); *Sonnier*, 649 F. Supp. 2d at 493 (finding that the *Ex parte Young* exception applied to an assistant vice president who was specifically listed in the applicable policy). Plaintiffs sufficiently allege Defendants' involvement in SORNA's enforcement in their Amended Complaint. ECF No. 39 at 6-7.

State law gives LSP the power to execute arrests for violations of SORNA. La. R.S. § 40:1379(B). LSP has jurisdiction to arrest and imprison throughout the entire state. La. R.S. §

40:1379(B). As the entity with the power to arrest for violations of SORNA, LSP meets the some connection test with regard to SORNA. *See Robinson v. Harrison*, No. 18-4733, 2019 U.S. Dist. LEXIS 45819, at *9 (E.D. La. Mar. 19, 2019). BCII develops and maintains the central registry known as the State Sex Offender and Child Predator Registry. La. R.S. § 15:542.1.5(A)(1). The Louisiana legislature granted BCII exclusive authority to "adopt regulations and procedures to prescribe the terms and conditions under which information shall be released in accordance with the provisions of R.S. 15:540 through 549." La. R.S. § 15:578(A)(7). Thus, BCII meets the some connection test.

DOC is responsible for issuing the sex offender identification cards described in La. Rev. Stat. Ann. § 40:1321, as well as the driver's licenses bearing the "SEX OFFENDER" designation described in La. Rev. Stat. Ann. § 32:412. OMV is responsible for issuing and annually renewing the driver's licenses of people who are required to register as sex offenders with the words "SEX OFFENDER" printed on the licenses in orange letters. La. R.S. § 32:412(I)(1) and (4). DOC and OMV both therefore meet the some connection test.

Plaintiffs seek an injunction that would prohibit Defendants from continuing to engage in this enforcement conduct. Plaintiffs request that they each be removed from the registry and released from SORNA's requirements by virtue of an order to LSP, BCII, DOC, and OMV. Therefore, Plaintiffs have satisfied the "some connection" requirement. *See K.P.*, 627 F.3d at 124; *Doe v. Caldwell*, 913 F.Supp.2d at 273 & n.9; *Doe v. Jindal*, 851 F.Supp.2d 995, 1004 (E.D. La. 2012).

For these same reasons, LSP, OMV, and BCII have the procedural capacity to be sued under Louisiana law. Under Louisiana law, applicable here pursuant to Rule 17(b) of the Federal Rules of Civil Procedure, an entity must qualify as a "natural person" or a "juridical person" to possess the capacity to sue or be sued. *See, e.g., Dugas v. City of Breaux Bridge Police Dep't*, 99-1320 (La. App. 3 Cir. 2/2/00); 757 So.2d 741, 743. In *Roberts v. Sewerage & Water Bd. of New Orleans*, the Supreme Court set

forth the framework for determining whether an entity qualifies as a juridical person and, as a result, has the capacity to sue and be sued:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.

92-2048 (La. 3/21/94); 634 So.2d 341, 346.

Here, LSP, OMV, and BCII each function independently and discretely to contribute to the alleged constitutional violations. Accordingly, LSP, OMV, and BCII are separate and independent juridical persons capable of being sued, and Plaintiffs' claims against them should not be dismissed.[2]

### c.    The Named State Agencies Are Proper Defendants

The named state agencies—LSP, BCII, DOC, and OMV—are proper defendants because "the real party in interest in an official-capacity suit is the governmental entity and not the named official[.]" *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see also Turner v. Houma Mun. Fire and Police Civil Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000) (noting that "[t]he official-capacity claims and the claims against the governmental entity essentially merge"). Official-capacity suits are treated as a suit against the entity itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In this vein, suits against the entity and government officers are redundant. *See, e.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Broussard v. Lafayette City-Parish Consol. Gov't*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014) ("When . . . the government entity itself is a defendant in the litigation, claims against specific

---

[2] If this Court finds that it is necessary to name state officials rather than these state agencies as defendants, Plaintiffs are willing to amend their Complaint accordingly.

individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.").[3]

ii.    **The Eleventh Amendment Is Not Implicated Where Defendants May Be Ordered to Pay Fees and Costs Should Plaintiffs Prevail**

Defendants' argument that the Eleventh Amendment prohibits a request for, or an award of, attorneys' fees, is incorrect—the Eleventh Amendment is not a bar to the award of § 1988 fees against a state. *Kirchberg v. Feenstra*, 708 F.2d 991, 999 (5th Cir.1983) (citing *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir.1977)). In fact, the law on this issue became "definitively settled" by "*Hutto v. Finney*,…which seized upon the language of § 1988 awarding attorney's fees 'as part of the costs' to reach its holding that the eleventh amendment did not bar the award of § 1988 fees against a state." *Kirchberg*, 708 F.2d at 999 (citing *Hutto v. Finney*, 437 U.S. 678, 695 (1978) and *Morrow v. Dillard*, 580 F.2d 1284, 1298-99 (5th Cir.1978)). "The [Supreme] Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants." *Morrow*, 580 F.2d at 1299 (citing *Hutto*, 437 U.S. at 695); *see also Echols v. Parker*, 909 F.2d 795, 799 (5th Cir.1990). Federal courts routinely order state governments to pay the attorneys' fees of prevailing parties pursuant to § 1988. *See, e.g.*, *Veasey v. Abbott*, 13 F.4th 362 (5th Cir. 2021); *Romain v. Walters*, 856 F.3d 402 (5th. Cir. 2017).[4]

B.    **SORNA Is Punitive When Enforced Against Individuals Whose Offenses Occurred When They Were Children**

Because Plaintiffs were children when their offenses occurred and were adjudicated delinquent rather than convicted, SORNA is a punitive scheme as applied to Plaintiffs. Specifically, SORNA's requirements amount to punishment because (i) SORNA satisfies many of the *Mendoza-Martinez*

---

[3] *See supra*, note 2.
[4] Plaintiffs are willing to voluntarily dismiss their request for an order and judgment that Defendants must return to Plaintiffs any funds expended in order to stay in compliance with SORNA throughout their registration period, ECF No. 39 at 50, pending consent from the Attorney General.

factors set forth by the Supreme Court, and (ii) SORNA drastically oversteps and undermines the rehabilitative purpose of the juvenile justice system.

i.    **SORNA Satisfies Many of the *Mendoza-Martinez* Factors**

SORNA's requirements and restrictions satisfy at least four of the seven factors set forth in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), for determining whether a scheme amounts to punishment.[5] First, SORNA involves multiple affirmative disabilities and restraints; second, SORNA serves the traditional aims of punishment; third, SORNA lacks a rational connection to a nonpunitive purpose for those with juvenile adjudications; and fourth, SORNA's restrictions are unreasonable in light of the nonpunitive objective of regulation. *Kennedy*, 372 U.S. at 168-69.

a.    **SORNA's Sweeping Requirements Impose Affirmative Obligations, Disabilities, and Restraints on Registrants**

The affirmative obligations, disabilities, and restraints imposed by SORNA's plethora of registration, residency, employment, and reporting requirements touch nearly every aspect of Plaintiffs' lives. The financial burdens imposed by annual registration fees and frequent in-person reporting requirements have caused Plaintiff Aaron Nelson, for instance, to miss work and to endure financial hardship. ECF No. 39 at 12. Due to SORNA's harsh residency restrictions, Plaintiff Shawn Mounce has struggled to find stable housing and has been arrested several times for not having an address. *Id.* at 22. And Plaintiff Benjamin Sheridan pleaded guilty to a felony after he missed one mandatory 90-day check-in while attempting to participate in JobCorps. *Id.* at 15.

Particularly onerous are SORNA's in-person reporting obligations, which require registrants to report periodically—sometimes as frequently as every 90 days—to the sheriff's office to renew their registration. La. R.S. § 15:542.1.1. Plaintiffs must also appear in person at the sheriff's office within

---

[5] The seven *Mendoza-Martinez* factors are "neither exhaustive nor dispositive." *United States v. Ward*, 488 U.S. 242, 249 (1980). Accordingly, courts generally do not analyze all seven factors when addressing sex offender registry schemes. *See, e.g.*, *Smith v. Doe*, 538 U.S. 84, 105 (2003) ("The two remaining Mendoza-Martinez factors—whether the regulation comes into play only on a finding of scienter and whether the behavior to which it applies is already a crime—are of little weight in this case.").

three days of establishing each new residence. La. R.S. § 15:542.1.2. Several state courts have found that in-person reporting requirements impose a disability and restraint. *See, e.g.*, *Starkey v. Okla. Dep't of Corr.*, 2013 OK 43, ¶ 49 ("[T]he affirmative 'in person' regulation and verification requirements alone cannot be said to be 'minor and indirect' especially when failure to comply is a felony.").

Similarly, SORNA's presence[6] and residency[7] restrictions constitute an affirmative disability and restraint tantamount to incapacitation. Federal and state courts have recognized the disability and restraint imposed by residency restrictions. *See, e.g.*, *Doe v. Snyder*, 834 F.3d 696, 703 (6th Cir. 2016) ("regulation of where registrants may live, work, and 'loiter' . . . puts significant restraints on how registrants may live their lives"); *Commonwealth v. Baker*, 295 S.W.3d 437, 440, 445 (Ky. 2009) (finding it "difficult to imagine that being prohibited from residing within certain areas does not qualify as an affirmative disability or restraint"); *People v. Betts*, No. 148981, 2021 Mich. LEXIS 1304, at *32 (July 27, 2021) ("[Michigan's sex offender registration laws] imposed onerous restrictions on registrants by restricting their residency and employment, and it also imposed significant affirmative obligations by requiring extensive in-person reporting").

Moreover, failing to register can lead to a felony conviction and imprisonment. *See* La. R.S. §§ 15:542(C)(3); 15:542.1.4. Imprisonment is the "paradigmatic" affirmative restraint. *Smith v. Doe*, 538 U.S. 84, 100 (2003). Other courts have recognized that Louisiana has among the strictest—if not the strictest—penalties for failing to register or pay the registration fee in the country. *See Bradshaw v. State*, 284 Ga. 675, 682 (2008). Under SORNA, youthful transgressions subject individuals to harsh penalties for their entire adult lives.

---

[6] ECF No. 39 at 18 ("When the victim is under 13 [which is disproportionately likely to be the case for people who committed offenses as children], a person found to have committed a sex offense per La. R.S. § 15:541 may not ever be physically present, for any amount of time, within 1,000 feet of any public or private  elementary or secondary school, or any school vehicle, when persons under the age of eighteen years are present on the school property or in a school vehicle. La. R.S. § 14:91.2(A).").

[7] *Id.* at 19 ("Registrants also may not establish a residence within 1,000 feet of early learning centers or child care centers, playgrounds, public or private youth centers, or public swimming pools, among other places. La. R.S. § 14:91.2(B).").

For these reasons, SORNA resembles traditional punishments of probation and parole. Like probationers and parolees, registrants are subject to a high degree of supervision by the state and are closely monitored by law enforcement; however, probationary terms and parole terms are far shorter than the lifetime terms imposed upon registrants. *See* La. C. Crim. P. art. 893 (probation term shall not exceed three years). Accordingly, SORNA's state supervision provisions and corresponding burdens are even more onerous than those of probation and parole punishments.

> **b.** **SORNA Serves the Traditional Aims of Punishment and Resembles Historical Punishments of Branding and Shaming**

SORNA advances the traditional aims of punishment—namely incapacitation, retribution, and specific and general deterrence. As the Sixth Circuit recently explained,

> [SORA's] very goal is incapacitation insofar as it seeks to keep sex offenders away from opportunities to reoffend. It is retributive in that it looks back at the offense (and nothing else) in imposing its restrictions, and it marks registrants as ones who cannot be fully admitted into the community. Further, as discussed below, it does so in ways that relate only tenuously to legitimate, non-punitive purposes. Finally, its professed purpose is to deter recidivism (though, as discussed below, it does not in fact appear to do so), and it doubtless serves the purpose of general deterrence.

*Snyder*, 834 at 704 (citing J.J. Prescott & Jonah E. Rockoff, *Do Sex Offender Registration and Notification Laws Affect Criminal Behavior?*, 54 J.L. & Econ. 161 (2011)).

Further, registration is comparable to historical punishments of branding and shaming. "One [] practice historically utilized for punishing criminals was public humiliation and degradation . . . It is hard to imagine a more punitive method of public humiliation or degradation than requiring an offender to wear a Scarlet Letter notifying the public of his past wrongs." *State ex rel. Olivieri v. State*, 00-0172 (La. 02/21/01), 779 So. 2d 735, 754 (Calogero, C.J., concurring in part and dissenting in part).

> **c.** **SORNA Lacks a Rational Connection to a Nonpunitive Purpose Because Children who Commit Sexual Offenses are Extremely Unlikely to Recidivate**

Although SORNA is ostensibly intended to promote public safety, the fundamental premise of this purpose—that "sex offenders, sexually violent predators, and child predators often pose a high

risk of engaging in sex offenses, and crimes against victims who are minors even after being released from incarceration or commitment" La. R.S. § 15:540—is demonstrably incorrect, as alleged in Plaintiffs' Amended Complaint.

People who committed sex offenses as juveniles have an extremely low recidivism rate generally and even lower sexual re-offense rates.[8] Studies universally confirm that sex offense recidivism among youth—regardless of the severity of the original offense—is exceptionally low, even when compared to the already-low recidivism rate amongst all people convicted of sex offenses.[9] Furthermore, registration of youth with sex offense adjudications does not reduce their already low recidivism rates.[10] In fact, recidivism rates are lower in states that do *not* register youth.[11] Plaintiffs' Amended Complaint summarizes additional empirical studies on recidivism on pages 35 to 39. As Plaintiffs allege based on a multitude of scientific studies, imposing lifetime registration requirements on children does not serve to deter future offenses.

The law itself recognizes that children have a greater capacity to change and rehabilitate, making SORNA's restrictions even more irrational and thus punitive. Children are fundamentally different from adults due to their adolescent development, diminished capacity, and ability to mature and change. *See, e.g.*, *Miller*, 567 U.S. at 471 ("juveniles have diminished culpability and greater prospects for reform"); J*.D.B. v. North Carolina*, 564 U.S. 261, 274 (2011) ("children cannot be viewed simply as miniature adults"); *Graham*, 560 U.S. at 68 ("[D]evelopments in psychology and brain science

---

[8] *See* Amended Compl., ECF No. 39 at 3 (citing Amy E. Halbrook, *Juvenile Pariahs*, 65 Hastings L.J. 1, 13 (2013)); *id.* at 34 (citing Michael Caldwell, et al., *Study Characteristics & Recidivism Base Rates in Juvenile Sex Offender Recidivism*, 54 Int'l J. Offender Therapy & Comp. Criminology 197, 198 (2010)).

[9] *See* Amended Compl., ECF No. 39 at 3 (citing Sharon E. Denniston & Michael F. Caldwell, *Answering the Call to Study the Effects of Juvenile SORN: Lessons from Two Studies*, Paper Presented at the ATSA 34th Annual Research and Treatment Conference (Oct. 15, 2015) (conducting a meta-analysis of numerous studies to find that 97% of all juvenile sex offenders never commit another sexual offense, regardless of the severity of their original offense)).

[10] *See* Amended Compl., ECF No. 39 at 34 (citing Caldwell, *supra* note 3 (finding no measurable difference in recidivism rates for registered and unregistered children who committed sexual offenses)).

[11] *See* Amended Compl., ECF No. 39 at 35 (citing Elizabeth Letourneau & Kevin Armstrong, *Recidivism Rates for Registered and Nonregistered Juvenile Sexual Offenders*, 20 Sexual Abuse: J. of Res. and Treatment 393 (2008)).

continue to show fundamental differences between juvenile and adult minds . . . Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults"); *Roper*, 543 U.S. at 569 ("In recognition of the comparative immaturity and irresponsibility of juveniles, almost every State prohibits those under 18 years of age from voting, serving on juries, or marrying without parental consent"). *See also* ECF No. 39 at 31-34 (explaining that children are developmentally and constitutionally different from adults).

Because the nexus between SORNA's onerous lifetime restrictions and its professed nonpunitive purpose flies in the face of scientific evidence and legal jurisprudence, SORNA lacks a rational connection to its professed goal of increasing public safety.

### d.    SORNA Imposes Excessive Punishment on Children Adjudicated Delinquent of Registrable Offenses

The excessiveness factor of the *Mendoza-Martinez* inquiry focuses on "whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105. When imposed on juveniles, SORNA's automatic lifetime restrictions—which touch virtually every aspect of life—are excessive in relation to its professed regulatory purpose. As recognized by the Sixth Circuit, "the punitive effects of these blanket restrictions . . . far exceed even a generous assessment of their salutary effects." *Snyder*, 834 F.3d at 705.

For these reasons, several courts have found registration schemes similar to Louisiana's to be punitive under the *Mendoza-Martinez* analysis. *See, e.g.*, *Doe v. Rausch*, 382 F. Supp. 3d 783, 799 (E.D. Tenn. 2019) (concluding that "the actual effect of lifetime compliance . . . is punitive . . . [because it has] limited where [the plaintiff] can live, work, gather with family, and travel without any individualized assessment of whether those restrictions are indeed necessary to protect the public from any future crimes he may commit."); *Doe v. State*, 167 N.H. 382, 111 A.3d 1077, 1100 (N.H. 2015); *Starkey v. Oklahoma Dep't of Corr.*, 2013 OK 43, 305 P.3d 1004 (Okla. 2013); *State v. Letalien*, 2009 ME

130, 985 A.2d 4, 26 (Me. 2009); *Commonwealth v. Baker*, 295 S.W.3d 437 (Ky. 2009); *Doe v. State*, 189 P.3d 999, 1017 (Alaska 2008).

SORNA treats juveniles *more punitively* than adults and imposes excessive punishment on juveniles: a child adjudicated delinquent of a registrable offense and required to comply with SORNA will, on average, serve more years and a greater percentage of his life subject to SORNA's extensive regime than an adult convicted of a registrable offense. And children subject to SORNA must cross into adulthood—professionally, physically, mentally, and personally—already branded as dangerous sexual predators. Furthermore, SORNA contravenes the otherwise confidential nature of juvenile matters enshrined in the Louisiana Children's Code. La. Ch. C. 412. The public nature of the searchable internet repudiates the guiding principle that juvenile proceedings remain confidential to promote the rehabilitative goals of juvenile procedures. *See State v. Hillard*, 421 So. 2d 220, 223 (La. 1982) (citing *Davis v. Alaska*, 415 U.S. 308, 319 (1974)); *see also* ECF No. 39 at 34-35 (alleging that Louisiana's juvenile system is meant to be rehabilitative).

### ii. Enforcing SORNA Against People with Juvenile Adjudications Imposes Punishment by Drastically Overstepping and Undermining the Rehabilitative Purpose of the Juvenile Justice System

Lifetime sex offender registration as applied to juveniles "ostensibly runs afoul of the entire premise for the juvenile justice system" and "may very well expose [individuals] to potential life-long direct stigmatization, social exclusion and ostracism, marginalization, harassment, residential restrictions, employment restrictions, alternative school arrangements, scrutiny and condemnation, which are theoretically expected as it pertains to an adult offender." *State ex rel. A.N.*, 2018-01571 (La. 10/22/19) n.7, 286 So. 3d 969, 972 (citing *State in Interest of A.N.*, 18-0219 (La. App. 4 Cir. 8/23/18) (unpub'd)). "By imposing such an onerous burden . . . the state 'has abandoned its role as *parens patriae* and has imposed draconian punishment instead of focusing on rehabilitation.' The court of appeal thus concluded that the requirements were punitive as applied to a juvenile, counterproductive to the

goals of rehabilitation, and contrary to the long-held policy of the state to maintain confidentiality of juvenile records." *Id.*

Defendants fail to cite to a single case in which a state or federal court in this Circuit has held that SORNA's cumulative lifetime requirements and restrictions, as applied to juveniles, are non-punitive.[12] Instead, Defendants rely almost exclusively on cases brought by individuals convicted of sex offenses as adults. Defendants themselves acknowledge that because they were juveniles at the time of the alleged offenses, "Plaintiffs were adjudicated and not convicted." ECF No. 45-1 at 21. Yet Defendants fail to recognize than any assessment of SORNA's punitive effect requires consideration of the well-established scientific and legal differences between children and adults.[13]

Although Defendants also cite a few cases involving juveniles in support of their arguments, all three cases are inapposite here. *Millard v. Camper*, 971 F. 3d 1174 (10th Cir. 2020), involved a challenge to Colorado's statutory scheme, in which juveniles could petition for deregistration—and the plaintiff himself was eligible for deregistration. *Id.* at n. 5, n. 6. Unlike in Colorado, juveniles in Louisiana are not automatically eligible for deregistration, and none of the Plaintiffs in this case are eligible for deregistration. Both *United States v. Under Seal*, 709 F.3d 257 (4th Cir. 2013), and *United States v. Juvenile Male*, 670 F.3d 999 (9th Cir. 2012), involve challenges to the federal sex offender registration statute's registration requirements, which do not place restrictions on residency, presence, and so forth, and are far less draconian than Louisiana's comprehensive SORNA scheme. *See, e.g., United States v. W.B.H.*, 664 F.3d 848, 857 (11th Cir. 2011) ("Offenders who register under [federal]

---

[12] In addition, Defendants point to several cases that were decided prior to the 2008 amendments to SORNA requiring juveniles to register. *See, e.g., Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870 (5th Cir. 2001); *State ex rel. Olivieri*, 779 So. 2d 735. These courts did not consider SORNA as it exists today, nor did they consider SORNA as it applies to juveniles. Accordingly, they are inapposite here.

[13] Defendants also point to several cases upholding various states' sex offender neighborhood notification provisions. *See, e.g., Moore*, 253 F.3d 870; *Kirschenhunter v. Sheriff's Office, Beauregard Parish*, 165 F. App'x 362 (5th Cir. 2006). But Plaintiffs in this case do not challenge Louisiana's sex offender notification provisions. Therefore, Defendants' reliance on these cases is misplaced.

SORNA are not subject to any physical restraints."). Thus, equating either the Colorado statute or the federal statute with the Louisiana SORNA requirements enforced against Plaintiffs is inappropriate.

### C.     Plaintiffs Have Stated Claims Upon Which Relief Can Be Granted

Plaintiffs have stated claims upon which relief can be granted and will address each in turn.[14]

### i.     SORNA Violates the Eighth Amendment by Imposing Cruel and Unusual Punishment for Childhood Conduct

As described in the Amended Complaint, subjecting children to SORNA's requirements is punitive and violates the Eighth Amendment ban on cruel and unusual punishment. ECF No. 39 at 35-38. "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.'" *Miller v. Alabama*, 567 U.S. 460, 469 (2012) (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). This right "flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense." *Id.* (internal quotation marks omitted) (quoting *Roper*, 543 U.S. at 560).

In *Miller*, the Supreme Court examined historical "precedent reflecting our concern with proportionate punishment" to reach its holding that the mandatory imposition of life without parole sentences for juveniles violates the Eighth Amendment. *Id.* at 470. Specifically, the Court discussed precedent imposing "categorical bans on sentencing practice based on mismatches between the culpability of a class of offenders and the severity of a penalty" and "specifically focused on juvenile offenders, because of their lesser culpability." *Id.* (citing *Graham v. Florida*, 560 U.S. 48, 60-61 (2010)). The Court also discussed precedent prohibiting mandatory imposition of certain sentences upon certain defendants—in particular the imposition of a capital sentence upon a juvenile defendant—and "requiring that sentencing authorities consider the characteristics of a defendant and the details of his

---

[14] Defendants address at length a claim under substantive due process (Defs.' Mot., ECF No. 45-1 at 14-18); however, Plaintiffs have not brought a substantive due process claim.

offense before sentencing . . . ." *Id.* (*citing Woodson v. North Carolina*, 428 U.S. 280 (1976) (plurality opinion); *Lockett v. Ohio*, 438 U.S. 586 (1978)).

*Miller* and its guiding precedent are necessarily implicated by SORNA because SORNA imposes mandatory punishment upon juveniles. Yet Defendants make no mention of *Miller*, *Roper*, *Graham*, or *any* of the precedent relied upon in this crucial Eighth Amendment jurisprudence. Defendants' naked assertion that SORNA is non-punitive therefore ignores an essential discussion of proportionality and well-established case law confirming that children are different from adults.

### a.    Lifetime Imposition of SORNA is Grossly Disproportionate to the Juvenile Offender

For the same reasons that it imposes excessive punishment upon juveniles, SORNA is disproportionate to the juvenile offender. In this case, proportionality review must take into account that children are constitutionally different from adults for purposes of sentencing. *See Roper*, 543 U.S. at 561. Specifically, as discussed above, children are different in that they are inherently less culpable than adults and differ from adults with sex offense convictions with regard to the risk of reoffending.

Imposing lifelong stigmatizing punishment without any individualized assessment whatsoever is egregiously disproportionate when based upon the conduct of a child, committed at a time when he or she lacks the developmental maturity necessary for sound decision-making. "From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." *Roper*, 543 U.S. at 570. As the Supreme Court of Ohio explained when it held that the Eighth Amendment forbids the automatic imposition lifetime sex offender registration requirements upon juveniles:

> For juveniles, the length of the punishment is extraordinary, and it is imposed at an age at which the character of the offender is not yet fixed. Registration and notification necessarily involve stigmatization. For a juvenile offender, the stigma of the label of sex offender attaches at the start of his adult life and cannot be shaken. With no other offense is the juvenile's wrongdoing announced to the world. Before a juvenile can even begin his adult life, before he has a chance to live on his own, the world will know of his offense. He will never have a chance to establish a good character in the

community. He will be hampered in his education, in his relationships, and in his work life. His potential will be squelched before it has a chance to show itself. A juvenile—one who remains under the authority of the juvenile court and has thus been adjudged redeemable—who is subject to sex-offender notification will have his entire life evaluated through the prism of his juvenile adjudication. It will be a constant cloud, a once-every-three-month reminder to himself and the world that he cannot escape the mistakes of his youth.

*In re C.P.*, 131 Ohio St. 3d 313, 525 (Ohio 2012).

These same harms affect Plaintiffs. For example, Plaintiff Jacob Chiasson has been subject to SORNA's requirements for over 11 years for an offense allegedly committed when he was 15 years old. ECF No. 39 at 7-8. During these formative years, he has become a husband, a parent, and a professional—all of which have proved difficult due to SORNA's stigmatizing restrictions. *Id.* at 8. He cannot go to his daughter's school to drop her off or pick her up. *Id.* at 23. He cannot chaperone her field trips. *Id.* He could not attend her graduation. *Id.* He cannot take his children to parks or even attend the annual Christmas event at a local park with his kids. *Id.* Mr. Chiasson struggles to find work and has spent extended periods of time unemployed. *Id.* at 26. As a result, his wife must shoulder the burdens and costs of SORNA's restrictions despite the fact that she, too, has become a target of harassment. *Id.* at 23-24, 31.

Because of SORNA's automatic lifetime provisions, Mr. Chiasson, like all Plaintiffs, will likely *never* be released from the grip of his childhood mistakes. As Plaintiffs' experiences reveal, and as discovery in this case will further illustrate, SORNA imposes grossly disproportionate punishment upon those adjudicated delinquent as juveniles and therefore violates the Eighth Amendment.

**ii.    SORNA Violates the Ex Post Facto Clause by Imposing Retroactive Punishment**

By retroactively punishing individuals who were adjudicated delinquent prior to its enactment,[15] SORNA violates the Ex Post Facto Clause, which "forbids the imposition of punishment

---

[15] The Ex Post Facto Clause is implicated here because Plaintiffs Shawn Mounce and Jacob Chiasson were adjudicated delinquent prior to the enactment of Louisiana's SORNA, which became effective on January 1, 2008. ECF No. 39 at 41.

more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981). "[I]t is the effect, not the form, of the law that determines whether it is *ex post facto*." *Id.* at 31. Thus, even if the legislature intended to enact a non-punitive regulatory scheme, courts "must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (cleaned up).

Plaintiffs sufficiently allege that SORNA is punitive in purpose and effect. *Supra*, Section B. Defendants' sweeping reliance on *Smith v. Doe*'s outdated analysis of an adult's ex post facto challenge to Alaska's sex offender registration statute is misplaced and deceptive. A closer examination of Alaska's sex offender registration scheme reveals significant differences from Louisiana's SORNA:

| Alaska's Sex Offender Registration Statute Analyzed in *Smith v. Doe* | Louisiana's SORNA |
|---|---|
| No limitations on work | Plaintiffs cannot be physically present within 1,000 feet of a school, school vehicle, early learning center, or certain residences. Plaintiffs also cannot loiter within 1,000 feet of public library property. La. R.S. § 14:91.2. |
| No limitations on residency | Plaintiffs cannot establish residence within 1,000 feet of a school, early learning center, public parks or recreational facilities, playgrounds, youth centers, public swimming pools, and free standing video arcade facilities. La.R.S. § 14:91.2. |
| No limitations on travel | Plaintiffs must notify law enforcement if they leave the state for a period of more than 7 consecutive days or for an aggregate of thirty days or more during a calendar year. La. R.S. § 15:542.1.3(E). |
| No in-person reporting | In-person reporting requirements ranging from every 3 months to annually. La. R.S. § 15:542.1.1(A). Updates to residential address and other registration information must also be made in person. La. R.S. § 15:542.1.2(A). |
| No fees | $60 annual fee. La. R.S. § 15:542(D). |
| Different registration requirements based on expected danger of recidivism | All juvenile offenders classified as Tier 3 and subject to automatic lifelong requirements. La.R.S. § 15:544(B)(2). |

---

Plaintiff Patrick Busby was adjudicated delinquent after the enactment of SORNA, but prior to the amendment that required juveniles to register for life, which became effective on August 15, 2008. *Id.*

18

| No restrictions on travel | Plaintiffs must report temporary lodging information at least 3 or 21 days in advance. La. R.S. § 15:542(C)(1)(n). |

These substantial differences are salient here, as they were in *Smith*. In reaching its finding of a non-punitive effect, the Court in *Smith* relied on the fact that "offenders subject to the Alaska statute are free to move where they wish and to live and work as other citizens, with no supervision." *Smith*, 538 U.S. at 101. The *Smith* Court also relied on the fact that "The Alaska statute, on its face, does not require [registration] updates to be made in person." *Id.* at 100. Moreover, the *Smith* Court found that the Alaska law did not have a retributive effect because the law imposed different registration requirements based on the expected risk of recidivism. *Id.* at 102. The stark contrast between the Alaska and Louisiana statutes—coupled with the crucial fact that the *Smith* Court addressed a challenge brought by an adult offender—render *Smith* inapplicable here.

SORNA is far more analogous to the Michigan sex offender registration statute struck down under the Ex Post Facto Clause in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016). There, the Sixth Circuit applied the *Mendoza-Martinez* factors to Michigan's sex offender registration statute to find that "Michigan's SORA imposes punishment." *Id.* at 701-05. In reaching this finding, the Sixth Circuit considered recent empirical studies casting doubt on *Smith*'s pronouncement that "the risk of recidivism posed by sex offenders is 'frightening and high,'" *id.* at 704, as well as the severity of Michigan's statutory scheme, which "directly regulate[d] where registrants may go in their daily lives and compel[led] them to interrupt those lives with great frequency in order to appear in person before law enforcement to report even minor changes to their information." *Id.* at 705.

In several respects, Louisiana's SORNA is even more restrictive than the Michigan sex offender registration statute declared unconstitutional in *Snyder*. While the Michigan statute restricted individuals from "living, working, or 'loitering' within 1,000 feet of a school," *id.* at 698, SORNA imposes additional presence and residency restrictions within 1,000 feet of school vehicles, learning

centers, parks, playgrounds, swimming pools, and more. *See* La.R.S. § 14:91.2. While the Michigan statute provided for a non-public registry for individuals adjudicated as juveniles,[16] SORNA places juveniles on the same public, searchable registries as adults. And while the Michigan statute divided registrants into tiers based on the predicate offense, *Snyder*, 834 F.3d at 698, SORNA automatically classifies all registrants who were adjudicated delinquent as juveniles as Tier III (the highest tier) offenders and subjects them to automatic, lifetime registration. In sum, SORNA's extraordinarily punitive effect undermines its professed regulatory goal—a goal that empirical evidence shows it does not even accomplish.

> ### iii. SORNA Violates Federal Due Process by Creating an Irrebuttable Presumption of Future Dangerousness without Providing Juveniles with a Meaningful Opportunity to be Heard

The procedural due process guarantee of the Fourteenth Amendment "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (internal quotations omitted). Liberty interests "may arise from the Constitution itself, by reason of guarantees implicit in the word liberty, . . . or [they] may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations and quotations omitted).

Guided by these foundational principles, "[s]tatutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments." *Vlandis v. Kline*, 412 U.S. 441, 446 (1973). The Supreme Court defines a statute creating an irrebuttable presumption as one that "operates to deny a fair opportunity to rebut it." *Id.* (quoting *Heiner v. Donnan*, 285 U.S. 312, 329 (1932)); *see also Martin v. Houston*, 176 F. Supp. 3d 1286, 1305 (M.D.

---

[16] *See* https://www.michigancriminalsexualconductattorney.com/blog/2020/october/can-juveniles-be-put-on-the-sex-offender-registr/.

Ala. 2016) (explaining that irrebuttable presumptions "offend notions of due process . . . because they deny a benefit to or place a burden on an individual without giving that individual an opportunity to rebut a finding essential to the ultimate outcome of the statutory calculus.").

A court must consider three factors to determine "the specific dictates of due process": (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used"; and (3) the government's interest in the regulation. *Mathews*, 424 U.S. at 334-35.

> ### a. SORNA Undermines Plaintiffs' Private Interests in Establishing a Home, Raising Children, Pursuing Employment, and Maintaining their Privacy

SORNA deprives Plaintiffs of several private liberty interests secured by the Fourteenth Amendment. First, SORNA hinders Plaintiffs' right to establish a home. *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) (The right to establish a home is a liberty interest protected by the Due Process Clause). By restricting where Plaintiffs can live and imposing stringent residential reporting requirements,[17] SORNA makes it extremely difficult for Plaintiffs to find and maintain housing. For example, in his first year on the registry, Plaintiff Aaron Nelson lived in five different places because he kept having to move due to his sex offender status. ECF No. 39 at 21. Plaintiff Shawn Mounce has also struggled to find stable and affordable housing—he has been unable to stay with friends or family because he cannot live with children, and he was denied public housing because of his sex offender status before moving into a halfway house. *Id.* at 22.

Second, SORNA interferes with Plaintiffs' right to raise children. *See Meyer*, 262 U.S. at 399 (The right to bring up children is a liberty interest protected by the Due Process Clause). Specifically, SORNA frustrates Plaintiffs' ability to be involved in their children's upbringing. SORNA has

---

[17] Registrants must provide two forms of proof of residence or an affidavit of an adult living at the same address. La. R.S. § 15:542(C). SORNA also requires registrants to appear in person with the sheriff to report a change of residence within three days. La. R.S. § 15:542.1.2.

impeded Plaintiff Robert Ruiz's ability to be a parent to his three-year-old son—when he was on parole, he was told that he could not be present for the birth, and he was not allowed to live with his son for the first three months of the infant's life. ECF No. 39 at 27. Plaintiff Jacob Chiasson is not allowed to go to his children's schools. He cannot drop off his eight-year-old daughter at school or pick her up. He cannot chaperone his daughter's field trips. He was not able to attend his daughter's graduation ceremony at school. He cannot take his children to parks. *Id.* at 21.

Third, SORNA impedes Plaintiffs' ability to find and maintain employment. *See Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686, 704 (7th Cir. 2001) ("The concept of liberty protected by the due process clause has long included occupational liberty—the liberty to follow a trade, profession, or other calling") (internal quotations omitted). SORNA imposes significant impediments to Plaintiffs' employment because many employers are reluctant to hire them, Plaintiffs' employment options are severely curtailed by SORNA's restrictions,[18] and Plaintiffs experience workplace discrimination because of their sex offender status. *See* ECF No. 39 at 24-26. For example, Plaintiff Hunter Calcione was told that he would never be accepted into the Army, Navy, or Air Force because he is a registered sex offender. *Id.* at 26. Similarly, Plaintiff Patrick Busby was fired from several jobs once his background check revealed his status as a sex offender. *Id.* at 25. As a result of SORNA's detrimental effects on occupational liberty, Plaintiffs struggle to find work and make ends meet. *See generally id.*

Fourth, SORNA violates Plaintiffs' right to privacy. Plaintiffs' right to privacy arises from Louisiana's laws and policies pertaining to the confidentiality of juvenile proceedings. *See Wilkinson*, 545 U.S. at 222 ("a liberty interest . . . may arise from state policies or regulations"). In particular, juveniles' heightened privacy interest is recognized by the Louisiana's Children's Code: La. Ch. C. art. 412 expressly mandates the confidentiality of "records and reports concerning all matters or

---

[18] Pursuant to La. R.S. § 15:553, Plaintiffs are excluded from several specific occupations including working for driver contract services, providing residential services, and operating carnival or amusement rides.

proceedings before the juvenile court . . . .".  In *State v. Hillard*, the Louisiana Supreme Court explained the State's policy undergirding confidentiality of juvenile records: "[E]xposure of a juvenile's record of delinquency would likely cause impairment of rehabilitative goals of the juvenile correctional procedures. This exposure . . . might encourage the juvenile offender to commit further acts of delinquency, or cause the juvenile offender to lose employment opportunities or otherwise suffer unnecessarily for his youthful transgression." 421 So. 2d 220, 223 (La. 1982) (citing *Davis v. Alaska*, 415 U.S. 308, 319 (1974)). SORNA infringes juveniles' constitutional right to privacy and contravenes the policy of confidentiality by publishing their status as sex offenders (and other personal information) on searchable online registries. SORNA's social media provisions also implicate the right to privacy. If a registrant is allowed to access social media, he must include in his profile an indication that he is a sex offender, along with his crime and address. La. R.S. § 15:542.1(D)(1).

      **b.**      **SORNA Deprives Plaintiffs of Protected Liberty Interests Without a Meaningful Opportunity to be Heard**

SORNA imposes mandatory, lifelong consequences implicating Plaintiffs' constitutionally protected liberty interests without providing them with a meaningful opportunity to be heard. Particularly in the context of youth proceedings, the Supreme Court has emphasized the importance of individualized consideration of age and other factors in determining penalties for a particular juvenile. *See, e.g. Miller*, 567 U.S. at 483 (mandating that "a sentencer follow a certain process-- considering an offender's youth and attendant characteristics—before imposing a particular penalty."). Similarly, "The applicable due process standard in juvenile proceedings . . . is fundamental fairness," *McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971), and fundamental fairness requires the "[juvenile] judge to take into consideration social and psychological factors, family background, and education in order to shape the disposition in the best interest of both the child and society." *State ex rel. D.J.*, 2001-2149 (La. 05/14/02), 817 So. 2d 26, 33.

By depriving juveniles of any type of individualized assessment prior to inflicting automatic, lifelong consequences on their liberty interests, SORNA creates precisely the type of permanent irrebuttable presumption that offends due process. Specifically, SORNA creates a permanent irrebuttable presumption that individuals who were children at the time of their registrable offense are highly likely to reoffend. *See La.* R.S. 15:540(A) ("[S]ex offenders, sexually violent predators, and child predators often pose a high risk of engaging in sex offenses."). Overwhelming and uncontroverted research demonstrates this presumption to be false. *See supra*, Section II.B.i.c. But because SORNA is automatically imposed on each and every juvenile adjudicated delinquent of a registrable offense, registrants are categorically prohibited from rebutting the presumption of a high likelihood of recidivism. *See In the Interest of J.B.*, 630 Pa. 408, 438 (2014) (holding that "the application of SORNA's current lifetime registration requirements upon adjudication of specified offenses violates juvenile offenders' due process rights by utilizing an irrebuttable presumption.").

In *Stanley v. Illinois*, the Supreme Court struck down an Illinois statute requiring the State, upon the death of the mother, to take custody of all such illegitimate children, without providing any hearing on the father's parental fitness. 405 U.S. 645 (1972). The Court reasoned that by creating an irrebuttable statutory presumption that all unwed fathers are unfit to raise their children, the Illinois statute violated due process. *Id.* at 654-58. The Court recognized that while "[p]rocedure by presumption is always cheaper and easier," the Illinois statute "foreclose[d] the determinative issues" and "explicitly disdain[ed] present realities in deference to past formalities." *Id.* at 656-57; *see also id.* at 651 ("[T]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."). Accordingly, the Court held that a hearing on parental qualifications was necessary prior to a custody determination. *Id.* at 658.

Like the statute at issue in *Stanley*, SORNA creates a presumption that forecloses the determinative issues (the risk of recidivism) and explicitly disdains present realities (empirical research

demonstrating that children who commit sex offenses are extremely unlikely to recidivate) in deference to past formalities. In doing so, the statute "insists on presuming rather than proving" that all juveniles who commit registrable offenses pose a high risk of recidivism "solely because it is more convenient to presume than to prove." *Id.* at 658. And it does so at the expense of lifelong individual liberty. Accordingly, SORNA's statutory scheme risks an erroneous deprivation of private interests by imposing a permanent irrebuttable presumption of a high likelihood of recidivism.

### c.   The Government's Interest in Public Safety does not Outweigh the Private Interests

While the State has a legitimate interest in public safety, the value of adding procedural safeguards prior to imposing SORNA's severe, lifelong restrictions upon a juvenile outweighs "the administrative burden and other societal costs that would be associated with" such safeguards. *Mathews*, 424 U.S. at 347. Although procedural safeguards such as an individualized assessment and a hearing on the risk of recidivism will inevitably increase the time and expense associated with particular juvenile adjudications, these safeguards remain the bulwark of juvenile adjudications.[19]

Furthermore, the interest-balancing analysis here must be considered in light of the differences between children and adults and the breadth of SORNA's regime. Unlike in *Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 8 (2003), where an adult plaintiff challenged the public disclosure provisions of Connecticut's sex offender laws, Plaintiffs here challenge SORNA's entire statutory scheme as it applies to individuals adjudicated delinquent as juveniles. Accordingly, this Court must consider the unique private interests served by providing juveniles with a meaningful opportunity to challenge the presumption of a high likelihood of recidivating.

### iv.   SORNA Violates Plaintiffs' Due Process Rights by Infringing on Their Right to Reputation Without a Meaningful Opportunity to Be Heard

---

[19] In fact, the Office of Juvenile Justice's website boasts the use of individualized assessment tools and tailored solutions to promote rehabilitation. *See* Office of Juvenile Justice, *Our Youth Services*, https://ojj.la.gov/serving-youth-families/our-youth-services/.

SORNA also violates due process by infringing Plaintiffs' right to reputation without providing a meaningful opportunity to be heard. Plaintiffs' interest in their right to reputation is rooted in Article 1, Section 22 of the Louisiana Constitution: "Every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his . . . reputation." La. Const. art. 1 § 22. This liberty interest established by state law creates a protected interest under federal due process that cannot be taken away without adequate due process of law. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by . . . an independent source such as state law.").

The Louisiana Supreme Court has recognized that one's reputation, "the right to a good name and fame," is as "absolute and essential to the 'pursuit of happiness' as is the right to life and liberty, characterized in our Declaration of Independence." *Kennedy v. Item Company Inc.*, 34 So. 2d 886, 890 (La. 1948). Children have a heightened right to reputation because a child's character is not yet fully formed. *See, e.g.*, *Roper*, 543 U.S. at 570 (recognizing that "the character of a juvenile is not as well formed as that of an adult" and "[t]he personality traits of juveniles are more transitory, less fixed.").[20]

The label of "sex offender" conveys factual connotations that the branded individual is likely to re-offend—connotations disproven by abundant research. That label is published on the public sex offender registry, on social media, and in background checks. Individuals are thus forced to walk through life, from childhood to adulthood into old age, carrying a defamatory Scarlet Letter without ever having an opportunity to clear their name.[21]

---

[20] Recognizing the fundamental differences between children and adults, the U.S. Department of Justice's Office of Sex Offender Sentencing, Monitoring, Apprehending, Registering, and Tracking guides policymakers that "juveniles who commit sexual offenses should not be labeled as sexual offenders for life, and sex offender management policies commonly used with adult sex offenders should not automatically be used with juveniles who commit sexual offenses." Christopher Lobanov-Rostovsky, *Recidivism of Juveniles who Commit Sexual Offenses*, U.S. Dep't of Justice (July 2015), available at https://www.smart.ojp.gov/sites/g/files/xyckuh231/files/media/document/juvenilerecidivism.pdf.

[21] *See In re B.B. et al.*, CP-45-JV-248-2012, Jan. 16, 2014, (Pa. Ct. Comm. Pl. Monroe) (Op. J. Patti-Worthington) ("The law will imbue the juvenile with the reputation of a sexual offender through formative stages of his life and continuing into

> **v.    SORNA Violates Plaintiffs' Due Process Rights by Depriving Them of Their Constitutional Right to Trial by Jury**

By subjecting juveniles to punishment—including lengthy terms of imprisonment for noncompliance with its myriad conditions—without a trial by jury, SORNA violates the Sixth and Fourteenth Amendments to the U.S. Constitution. "The Sixth Amendment . . . requires criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Salazar*, 751 F.3d 326, 333 (5th Cir. 2014) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). "[J]uries in our constitutional order exercise supervisory authority over the judicial function by limiting the judge's power to punish." *United States v. Haymond*, 139 S. Ct. 2369, 2376 (2019).

Of course, the purpose of the juvenile justice system is rehabilitation, not punishment. *See In re C.B.*, 708 So. 2d 391, 397 (La. 1998) (citing *McKeiver v. Pennsylvania*, 403 U.S. 528 (1970); *see also Santosky v. Kramer*, 455 U.S. 745 (1982); *In re Winship*, 397 U.S. 358 (1970). Because juvenile adjudications are not designed to punish, and because they require the flexibility and experience of a juvenile judge, juries are absent from juvenile adjudications in Louisiana. *See State ex rel. D.J.*, 2001-2149 (La. 05/14/02), 817 So. 2d 26, 33. For the same reason, Louisiana has a "long-held policy . . . to maintain confidentiality of juvenile records." *State ex rel. A.N.*, 2018-01571 (La. 10/22/19) n.7, 286 So. 3d 969, 972 (citing *State in Interest of A.N.*, 18-0219 (La. App. 4 Cir. 8/23/18) (unpub'd)).

Yet SORNA ties a juvenile judge's hands by requiring her to impose its mandatory sex offender requirements, which, as described *supra*, amount to punishment in public view. *See State v. Quinones*, La. App. 03-907, 864 So. 2d 824, 830 (La. App. 5 Cir. 2003) ("The duty to register under La.R.S. 15:540 et seq. is mandatory"); *see also In re C.P.*, 131 Ohio St. 3d at 535-36 ("The requirement . . . of automatic imposition of Tier III classification on a juvenile offender . . . undercuts the

_____

old age. A juvenile who was adjudicated delinquent when he was fourteen will continue to be known as a sexual offender when he is seventy.").

rehabilitative purpose of Ohio's juvenile system and eliminates the important role of the juvenile court's discretion in the disposition of juvenile offenders . . . ."). And it does so without a trial by jury, meaning that Plaintiffs are subject to SORNA's mandatory, lifelong punishment without a jury's factual findings of criminal conduct. *See Haymond*, 139 S. Ct. at 2376.

When he was 15 years old, Plaintiff Robert Ruiz was not entitled to a jury trial because his juvenile proceeding was premised on notions of rehabilitation, confidentiality, and individualized assessment by a skilled juvenile judge. *See In re C.P.*, 131 Ohio St. 3d at 534 ("[T]he expertise of a juvenile judge is necessary . . . given the juvenile system's goal of rehabilitation . . . ." (internal quotation omitted)); ECF No. 39 at 6. Yet ever since he was 17, Plaintiff Robert Ruiz has been on the same public, searchable internet registry as adults convicted, by a jury, of registrable sex offenses. He has worn the same "statutorily imposed scarlet letter" as adults found guilty beyond a reasonable doubt by a jury. *In re C.P.*, 131 Ohio St. 3d at 527. And he has spent eighteen months in jail, without ever even having the *right* to a jury trial, because he unintentionally failed to comply with SORNA and was convicted (still without a jury) on felony charges.[22] As typified by the blurred lines between Mr. Ruiz's juvenile and adult proceedings, SORNA not only does violence to the rehabilitative goals of juvenile proceedings but also deprives Plaintiffs of due process by imposing punishment without a trial by jury.

### vi.   SORNA Violates Plaintiffs' First Amendment Rights by Compelling Speech

Defendants assert that Plaintiffs' claim regarding compelled speech—regarding the orange label of "SEX OFFENDER" on mandatory identification cards and driver's licenses—should be dismissed (as moot, it would seem) because it is no longer being enforced, but they do not provide

---

[22] As alleged in the Amended Complaint, Plaintiff Robert Ruiz has two felony charges for failure to register. The first occurred in 2013 when Mr. Ruiz failed to get a housing affidavit notarized because he could not pay for the notary's services, and he was caught having a social media account that he did not know was prohibited under SORNA. As a result, Robert Ruiz spent six months in jail. The second charge occurred in 2015 when Mr. Ruiz could not report a home address. He had been living with his cousin and aunt, but after his cousin committed suicide, his distraught aunt kicked him out of the house, and Mr. Ruiz fled to a different parish. Due to not having a home address, Mr. Ruiz spent one year in jail.

any evidence to support this factual claim. It would be premature to dismiss this claim without further development of the factual record given that Plaintiffs have alleged that they have not been permitted to stop carrying these branded identification cards.

> vii.    **SORNA Violates Plaintiffs' First Amendment Rights by Chilling Speech**

Defendants argue that Plaintiffs' claim regarding chilled speech—regarding the prohibition on the use of social media and other online activity, which burden Plaintiffs' "ability and willingness to speak on the Internet," *Doe v. Marshall*, 367 F. Supp. 3d 1310, 1327 (M.D. Ala. 2019)—should be dismissed because the law prohibiting social media use does not apply to Plaintiffs, as they were adjudicated rather than convicted. But regardless of what the statute says, Defendants have enforced this provision against Plaintiffs. Plaintiff Robert Ruiz was jailed in part due to having a social media account. ECF No. 39 at 12. Plaintiff Patrick Busby's registration officer keeps his login information and can inspect his email inbox at any time, Plaintiff Aaron Nelson is unable to create an account for community gaming, Plaintiffs Benjamin Sheridan and Jacob Chiasson have been prohibited from having social media accounts, and when Plaintiff Hunter Calcione registered under SORNA, his officer told him that he had to delete all of his social media accounts immediately or he would be arrested (the officer even required screenshots to prove that he had deleted all accounts). *Id.* at 15-16.

If the text of the law excludes Plaintiffs from the ban on social media, then Defendants are in violation of that provision. Either way, Plaintiffs allege sufficient facts to support their claim regarding chilled speech.

> viii.    **SORNA Violates Plaintiffs' Constitutional Right to Intimate Association by Unjustifiably Interfering with their Close Familial Relationships**

SORNA violates Plaintiffs' constitutional right to intimate association by unjustifiably interfering with Plaintiffs' intimate associations with their family members. The First and Fourteenth Amendments guarantee the right of freedom of intimate association, which protects against

"unjustified government interference" in one's intimate relationships. *Board of Dir's. of Rotary Int'l. v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987) (citations and quotations omitted); *see also Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984) (the right of freedom of intimate association provides individuals with "a substantial measure of sanctuary from unjustified interference by the State" into the "formation and preservation of certain kinds of highly personal relationships"). "Marriage, childbirth, raising and educating children, and cohabitation with one's relatives are all intimate associations that the Court has very willingly recognized as worthy of constitutional protection." *Walker v. Henderson*, No. 00-60014, 2000 U.S. App. LEXIS 39151, at *6 (5th Cir. Nov. 16, 2000) (citing *Roberts*, 468 U.S. at 618).

Plaintiffs' highly personal relationships with their siblings, parents, grandparents, spouses, and children unquestionably receive the constitutional protection of the right to intimate association. *See Roberts*, 468 U.S. at 619-20 ("Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life."). All Plaintiffs allege facts supporting both the existence and the extent of their intimate familial relationships. *See generally* ECF No. 39.

But SORNA strains these close and loving relationships. Through harsh presence and residency restrictions, as well as tremendously stigmatizing effects, SORNA unjustifiably interferes with Plaintiffs' constitutionally protected relationships. Indeed, several Plaintiffs allege that SORNA has strained their marriages, interfered with their ability to be involved in their children's upbringing and education, and made cohabitation with their family members exceedingly difficult. *Id.* at 28-31. And because SORNA's mandates are lifelong, there is no end in sight.

Because Plaintiffs sufficiently allege the existence of a constitutionally protected intimate association and a government infringement upon that right, Plaintiffs' claim that SORNA unjustifiably interferes with their constitutional right to association should not be dismissed.

## III.    Conclusion

For these reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted this 7th day of December, 2021.

*/s/ Mercedes Montagnes*
Mercedes Montagnes, La. Bar No. 33287
Nishi Kumar, La. Bar No. 37415
Rebecca Ramaswamy, La. Bar No. 39524
The Promise of Justice Initiative
1024 Elysian Fields Avenue
New Orleans, LA 70117
Telephone: (504) 529-5955
Email: mmontagnes@defendla.org

John Adcock, La. Bar No. 30372
Adcock Law LLC
3110 Canal Street
New Orleans, LA 70119
Telephone: (504) 233-3125
Email: jnadcock@gmail.com

*Attorneys for Plaintiffs*