## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**AARON NELSON, ET AL.**

**VERSUS**

**JEFFREY LANDRY, in his official capacity
as Attorney General of the State of Louisiana;
ET AL.**

**CIVIL ACTION**

**NO. 20-837-JWD-RLB**

## RULING AND ORDER

This matter comes before the Court on *Plaintiffs' Motion for Partial Summary Judgment*, ("Motion") (Doc. 119), filed by plaintiffs Aaron Nelson, Robert Ruiz, Shawn Mounce, Jacob Chiasson, and Hunter Calcione (collectively "Plaintiffs")[1] against defendants Attorney General Elizabeth ("Liz") Murrill,[2] the Louisiana Department of Corrections and Public Safety ("DOC"), the Louisiana State Police ("LSP"), the Louisiana Office of Motor Vehicles ("OMV"), and the Louisiana Bureau of Criminal Identification and Information ("BCII") (collectively "Defendants"). Defendant Attorney General Liz Murrill ("Defendant") opposes the motion, (Doc. 121). Plaintiffs have filed a reply, (Doc. 122), and Defendant has filed a Notice of Supplemental Authority, (Doc. 123). Oral argument is not necessary. The Court has carefully considered the law, the arguments, and the submissions of the parties and is prepared to rule. For the following reasons, Plaintiffs' Motion is granted in part and denied as moot in part.

---

[1] Plaintiff Patrick Busby also brought forth this Motion, but on January 30, 2024, Busby was voluntarily dismissed from this suit. (*See* Doc. 145.)

[2] Plaintiffs originally named former Attorney General of Louisiana Jeffrey Landry as a defendant in this case. Louisiana has elected a new Attorney General since the filing of Plaintiffs' Motion. Pursuant to Federal Rule of Civil Procedure 25(d), Louisiana's new Attorney General, Liz Murrill, has automatically taken former Attorney General Jeffrey Landry's place as a defendant in this matter.

## I.    INTRODUCTION

### A.  Background

This case is about Louisiana's sex offender registration and notification statutory scheme. In their Motion, Plaintiffs, who committed sex-related offenses as juveniles and are now subject to Louisiana's statutory scheme, urge the Court to declare various parts of this scheme unconstitutional and enjoin the State from enforcing same against them. Specifically, Plaintiffs challenge (1) La. R.S. § 32:412(I): Louisiana's requirement that registered sex offenders' driver's licenses be branded with the phrase "SEX OFFENDER"; (2) La. R.S. § 40:1321(J): Louisiana's requirement that registered sex offenders' identification cards be branded with the phrase "SEX OFFENDER"; and (3) La. R.S. § 14.91.5: Louisiana's social media ban for registered sex offenders. (Doc. 119.)

### B.  Parties' Statements of Fact

Plaintiffs have been adjudicated delinquent of an offense enumerated in La. R.S. § 15:542(A)(3), and Plaintiffs Roberto Ruiz and Shawn Mounce were each prosecuted pursuant to La. R.S. § 14:91.5 for Unlawful Use of a Social Networking Website. (Doc. 119-2 at ¶¶ 1, 8; Doc. 121-1 at ¶¶ 1, 8.) While Plaintiffs contend that they are subject to mandatory, lifetime registration as sex offenders, Defendant qualifies that statement, explaining that this is so unless the conviction is set aside, reversed, or vacated or, pursuant to La. R.S. § 15:544(E)(2), lifetime registration is reduced to 25 years. (Doc. 119-2 at ¶ 2; Doc. 121-1 at ¶ 2.) Likewise, Defendant asserts that "[j]uvenile offenders are generally subject to lifetime registration as a sex offender except that they are eligible for a reduction to 25 years by Motion for Early Relief." (Doc. 121-1 at ¶ 12.) However, Plaintiffs deny Defendant's assertion, instead contending:

> Juvenile offenders are subject to lifetime registration as sex offenders. *See* ECF 121-3 (DOJ Rule 30(b)(6) Dep. (McLellan)) at 24:10-13 ("They are Tier 3 offenders who register for life."); 30:4-5 ("Well, their registration period is for

life."); 36:14-17 (Q. "[I]f all those are met, [t h e n] that person is going to be required to register for life?" A. "Yes, ma'am."); 46:3-8 (agreeing that "for people adjudicated in juvenile court, assuming all the requirements are met for the application of the sex offender laws, that's a lifetime registration"); *See also* La. R.S. 15:544 (B)(2) (stating that certain adjudicated juveniles "shall register and provide notification <u>for the duration of</u> their lifetime") (emphasis added).

Juvenile offenders are not "eligible for a reduction to 25 years by Motion for Early Relief." Instead, a juvenile can seek to commute his lifetime registration sentence after 25 years have passed. At that point, a court <u>may</u> enter an order discontinuing registration if the juvenile can prove by clear and convincing evidence that he maintained a "clean record" for 25 consecutive years. La[.] R.S. 15:544(E)(2). For these purposes, a registrant maintains a "clean record" by: (a) Not being convicted of any offense for which imprisonment for more than one year may be imposed; (b) Not being convicted of any sex offense; (c) Successfully completing any periods of supervised release, probation, or parole; (d) Successfully completing an appropriate sex offender treatment program by a registered treatment as provided in R.S. 24:936 or an appropriate sex offender treatment program certified by the Attorney General of the United States; (e) Complying with all sex offender registration and notification requirements in Louisiana each year for the prescribed period of time pursuant to the provisions of [15:544]. La. R.S. 15:544(E)(3). The registrant has the burden of establishing, by clear and convincing evidence, that he has maintained a clean record for 25 years and "that future registration and notification will not serve the purposes" of the registration scheme. La. R.S. 15:544(E)(4)(e). The district attorney, Department of Public Safety and Corrections, state police, and Department of Justice can oppose the motion. La. R.S. 15:544(E)(4)(a)(iii)-(4)(b). Further, the district attorney must "review the facts of the underlying sex offense . . . to determine if an objection to the motion is warranted based on continued concerns for public safety." La. R.S. 15:544(E)(4)(a)(iii).

(Doc. 122-1 at ❡ 12.)

Plaintiffs also assert that under La. R.S. § 32:412(I) and La. R.S. § 40:1321(J), most Plaintiffs were required to obtain and carry identification cards branded with "SEX OFFENDER" as well as have their driver's licenses branded with such. (Doc. 119-2 at ❡❡ 3, 4.) Further, the OMV administratively decided to stop branding driver's licenses pursuant to La. R.S. § 32:412(I) even though they were not required to. (Doc. 119-2 at ❡ 5.) However, Defendant qualifies Plaintiffs' assertions, instead contending that "[p]rior to January 4, 2021, Louisiana through the Office of

Motor Vehicles, labeled the driver's licenses of convicted sex offenders with the words 'SEX

OFFENDER' but that practice ended as of January 4, 2021 pursuant to the ruling of the Louisiana

Supreme Court in the matter of *State v. Hill*, [2020-00323 (La. 10/20/20), 341 So. 3d 539]." (Doc.

121-1 at ⫐⫐ 3, 4, 5, 9.) In response, Plaintiffs assert the following:

> The OMV's decision to stop issuing branding driver's licenses was not the result
> of a court order. ECF 119-10 (OMV Rule 30(b)(6) Dep. (Hoyt)) at 26:5-27:13, esp.
> 26:19-21 ("Administratively, we made the decision not to enforce this part of the
> statute."). In *Hill*, the Louisiana Supreme Court held that the branded identification
> requirement, La. R.S. 40:1321(J), violates the federal First Amendment because the
> "SEX OFFENDER" branding was compelled speech. *See* 341 So.3d at 555. But
> the *Hill* court did not consider, let alone resolve, the relevant question here: whether
> a <u>different</u> statute, La. R.S. 32:412(I), is also unconstitutional. *See* 341 So.3d at 543
> ("Defendant argued that La. R.S. 40:1321(J) and 15:542.1.4(C) violate the First
> Amendment prohibition against compelled speech.").

(Doc. 122-1 at ⫐ 9.) Further, "Plaintiffs object to being labeled 'SEX OFFENDERS.' " (Doc 119-

2 at ⫐ 6.) But Defendant denies this assertion as written because it is not a statement of fact and

"does not indicate whether the statement refers to driver's licenses or some other form of

'labeling.' " (Doc. 121-1 at ⫐ 6.)

    Moreover, Plaintiffs contend that they are restricted from using social media networking

sites, but Defendant qualifies this statement, adding that Plaintiffs are allowed to use these sites as

long as they do not intentionally violate La. R.S. § 14:91.5. (Doc. 119-2 at ⫐ 7; Doc. 121-1 at ⫐ 7.)

Defendant also asserts that "[m]inors are especially susceptible to unwanted sexual solicitation

online, and the U.S. Department of Justice joined by other law enforcement agencies are

committed to protecting and combating sexual exploitation of minors[,]" but Plaintiffs do not

admit or deny such assertion and instead contend that Defendant's assertion is not a statement of

material fact at issue in this case. (Doc. 121-1 at ⫐ 10; Doc. 122-1 at ⫐ 10.) Plaintiffs also contend

that the following assertion by Defendant is likewise not a statement of material fact, and as such,

Plaintiffs will not admit or deny it: "Federal SORNA requirements were much more onerous on

juvenile offenders than what the Louisiana legislature was interested in adopting when enacting a comprehensive revision of sex offender registration laws that became effective January 1, 2008." (Doc. 121-1 at ⁋ 11; Doc. 122-1 at ⁋ 11.)

## II.    RULE 56 STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden and must identify 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.' " *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted)).

However, "the movant 'need not *negate* the elements of the nonmovant's case.' " *Id.* (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc))). That is, "[a] movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Servicing, L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019) (citing *Celotex*, 477 U.S. at 323 ("we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim.")). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Id.* (citing *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002)).

If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material

facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue* for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (citations and internal quotations omitted).

Ultimately, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (cleaned up). Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991) (citations omitted).

## III.   DISCUSSION

In short, the Court will grant Plaintiffs' Motion in part and deny it in part. As to Plaintiffs' La. R.S. §§ 32:412(I) and 14.91.5 claims (involving the driver's license and social media ban, respectively), the Motion is granted. The Court declares La. R.S. § 32:412(I) unconstitutional and enjoins all Defendants from enforcing it, even though not all Defendants have opposed Plaintiffs' Motion. The Court declares La. R.S. § 14.91.5 inapplicable to adjudicated juvenile delinquents, and all Defendants are enjoined from enforcing this statute against adjudicated juvenile delinquents, even though not all Defendants have opposed Plaintiffs' Motion. As to Plaintiffs' La. R.S. § 40:1321(J) claim (involving state identification cards), Plaintiffs' claim is moot, and the Court thus denies this part of Plaintiffs' Motion, dismissing Plaintiffs' La. R.S. § 40:1321(J) claim without prejudice.

### A. Louisiana Revised Statutes § 32:412(I) Claim

#### 1. *Parties' Arguments*

##### a. Memo in Support (Doc. 119-1)

Plaintiffs begin by asserting that under La. R.S. § 40:1321(J), those who are required to register as sex offenders, regardless of the date of their conviction, must obtain and carry an identification card from the Department of Corrections that contains the words "SEX OFFENDER". (Doc. 119-1 at 5–6.) Likewise, under La. R.S. § 32:412(I), those who are required to register as sex offenders, regardless of the date of their conviction, must have the words "SEX OFFENDER" in orange on their driver's license. (*Id.* at 6.) Plaintiffs argue that since both statutes apply to registrants regardless of the date of the registrant's conviction and "[a] juvenile adjudication is not a conviction of any crime," these statutes do not apply to Plaintiffs, who are delinquents adjudicated in juvenile court. (*Id.* (citing *State v. Brown*, 03-2788 (La. 07/06/04), 879 So. 2d 1276, 1289–90; *State ex rel. K.L.A.*, 14-153 (La. App. 3 Cir. 06/04/14), 140 So. 3d 889, 892).)

Plaintiffs also argue that in the event La. R.S. § 40:1321(J) and La. R.S. § 32:412(I) do apply to juveniles, the statutes constitute compelled speech and are not the least restrictive means of achieving a compelling interest of the state, thus running afoul of the First Amendment. (*Id.* at 6–7.) The First Amendment not only protects the freedom to speak but also the freedom to refrain from speaking (*Id.* (citing *Wooley v. Maynard*, 430 U.S. 705, 714 (1977)).) Plaintiffs assert that to determine whether the government is compelling speech under the Supreme Court's decision in *Wooley*, courts must determine that there is "(1) speech; (2) to which the plaintiff objects; (3) that is compelled; and (4) that is readily associated with the plaintiff." (*Id.* at 7 (citing *Cressman v.*

*Thompson*, 798 F.3d 938, 949–51 (10th Cir. 2015); *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310, 1324 (M.D. Ala. 2019)).

Plaintiffs argue that all four elements are satisfied in this case. (*Id.*) Much like the phrase "Live Free or Die" that New Hampshire required to be printed on license plates, the phase "SEX OFFENDER" on government-issued identification constitutes speech. (*Id.*) Further, Plaintiffs disagree that they are "sex offenders," and "[e]ven a minor disagreement with a message is enough for constitutional purposes." (*Id.* at 8 (citing *United States v. United Foods, Inc.*, 533 U.S. 405, 411 (2001)).) Thus, Plaintiffs have satisfied the second element of objecting to the message. (*Id.*) With respect to the third element of the speech being compelled, Plaintiffs argue that the law requires them to display "SEX OFFENDER" on their driver's license. (*Id.*) Lastly, regarding the fourth element, Plaintiffs argue that the branded message is readily associated with them because "the very purpose of identification cards is to convey substantive personal information about the holder, including their full name, photograph, date of birth, home address, sex, height, weight, hair color, eye color, and signature." (*Id.*) Therefore, since all four of the *Wooley* elements are met, La. R.S. § 32:412(I) constitutes compelled speech. (*Id.*)

Since La. R.S. § 32:412(I) constitutes compelled speech, Plaintiffs argue that the statute must satisfy strict scrutiny because it is a content-based regulation. (*Id.* at 8–9 (citing *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2371 (2018); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988); *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226–27 (2015)).) Therefore, "the State must have a compelling interest, and it must have adopted the least restrictive means of achieving that interest." (*Id.* at 9.) Plaintiffs compare the present case to *Doe 1 v. Marshall*, 367 F. Supp. 3d 1310 (M.D. Ala. 2019), in which the court found that Alabama did not use the least restrictive means of carrying out its compelling interest of enabling law enforcement

officers to identify sex offenders by requiring the phrase "CRIMINAL SEX OFFENDER" to be inscribed on sex offenders' licenses. (*Id.*)

Plaintiffs also compare the present case to the Louisiana Supreme Court's decision in *State v. Hill*, 2020-00323 (La. 10/20/20), 341 So. 3d 539. (*Id.*) In *Hill*, the Louisiana Supreme Court found La. R.S. § 40:1321(J)'s branded identification requirement to constitute compelled speech which could not pass strict scrutiny, thus deeming the statute unconstitutional under the First Amendment. (*Id.* at 9–10.) For the same reasons that the Louisiana Supreme Court found La. R.S. § 40:1321(J) unconstitutional, Plaintiffs argue that La. R.S. § 32:412(I) is unconstitutional. (*Id.*) Further, after the *Hill* decision, the Office of Motor Vehicles "decided 'administratively' to stop enforcing the branded driver's license statute, La. R.S. § 32:412(I), even though no authority so directed. But there is nothing preventing the State from resuming its practice of issuing branded driver's licenses." (*Id.* at 10.)

b.  Opposition (Doc. 121)

Defendant first argues that there is no need to analyze the constitutionality of La. R.S. § 32:412(I) because *Hill* declared La. R.S. § 32:412(I) to be unconstitutional. (Doc. 121 at 11.) "In fact, when a bill was introduced in the 2021 regular session of the legislature to label driver's licenses issued to sex offender[s] with T1, T2[,] or T3, the bill was referred to committee and died in committee without a hearing." (*Id.* at 11–12.) Likewise,

> [t]he decision of the Louisiana Supreme Court in *State v. Hill* that labeling driver's license with the words "SEX OFFENDER" is unconstitutional, was rendered on October 20, 2020. Plaintiffs filed this instant suit after this ruling on December 11, 2020. The Office of Motor Vehicles stopped putting "SEX OFFENDER" on driver's licenses and special identification cards on January 4, 2021. If Plaintiffs had Article III standing at the outset of the litigation, it did not survive throughout the litigation as the alleged injury suffered by plaintiffs was already redressed by a favorable decision of the Louisiana Supreme Court.

(*Id.* at 13–14.) Therefore, Defendant argues that Plaintiffs' La. R.S. § 32:412(I) claim is moot because there is no longer a live controversy in this matter. (*Id.* at 13–14.)

Defendant also cites to *Yarls v. Bunton*, 905 F.3d 905 (5th Cir. 2018) for the proposition that even if there is no ruling from the Louisiana Supreme Court, a defendant's abandoned practice will moot a plaintiff's claim related to that action. (*Id.* at 14.) Likewise, Defendant addresses the exception to the mootness doctrine "that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' " (*Id.* at 15 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000)).) He argues that the exception does not apply when there is nothing to suggest the state will reimplement the challenged practice. (*Id.* at 16.) Moreover, the government's burden in proving the conduct will not re-occur is low because the government is presumed to be in good faith. (*Id.* at 15.) Here, as Defendant contends, there is nothing to suggest that the OMV will resume the branded identification requirement for driver's licenses. (*Id.* at 16.) Thus, the exception does not apply, and since there is no longer a case or controversy, Plaintiff's claim as it relates to La. R.S. § 32:412(I) is moot. (*Id.*)

c.  Reply (Doc. 122)

Plaintiffs argue in reply that Defendant has not identified a single issue of material fact. (Doc. 122 at 2.) As such, Plaintiffs' Statement of Uncontested Material Facts, (Doc. 119-2), should be deemed admitted as to Defendant. (*Id.*)

Plaintiffs also argue that *State v. Hill* struck down La. R.S. § 40:1321(J), not La. R.S. § 32:412(I), and thus the case did not resolve the question of whether La. R.S. § 32:412(I) is constitutional. (*Id.* at 3.) While Defendant argues that Plaintiffs' claims are moot because the OMV does not enforce La. R.S. § 32:412(I) after *State v. Hill* and enforcing such would violate *State v.*

*Hill*, Plaintiffs assert that "there is no ruling as to the constitutionality of La. R.S. § 32:412(I). Any change in OMV's practice related to branded driver's licenses was done voluntarily and quietly." (*Id.* at 4.)

> Plaintiffs then go on to assert the following:
>
> It is well established that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011) (citation omitted). The standard "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. This is a 'heavy burden,' which must be born[e] by the party asserting mootness." *Id.* (citing [*Laidlaw*, 528 U.S. at 189]). A mere promise not to reoffend does not satisfy this burden. *See Freedom from Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (government officials' representations through counsel that their behavior will change following a recent Supreme Court decision did not moot the case because no official policy retraction had occurred).

(*Id.* at 4–5.) They argue that Defendant has not satisfied this heavy burden because the legislature has not repealed La. R.S. § 32:412(I), *State v. Hill* is not binding on La. R.S. § 32:412(I), and the OMV did not notify anyone that it voluntarily decided to stop enforcing La. R.S. § 32:412(I). (*Id.* at 5.)

Plaintiffs also argue that Defendant is not entitled to a good faith presumption that it will not resume enforcement of La. R.S. § 32:412(I) in the future. (*Id.* at 5–6.) Rather, such a presumption only applies when the government formally announces its policy change. (*Id.* at 6.) Since Defendant has not done so in this case, the presumption is inapplicable. (*Id.*)

### 2. *Applicable Law*

Under La. R.S. § 32:412(I),

I. (1) The Louisiana driver's license, regardless of its class, issued to any person who is required to register as a sex offender pursuant to R.S. 15:542 and R.S. 15:542.1 shall contain a restriction code which declares that the license holder is a sex offender. The secretary of the Department of Public Safety and Corrections

shall comply with the provisions of this Subsection and the driver's license shall include the words "sex offender" which shall be orange in color.

(2) Any person to whom this Subsection applies shall carry upon his person the last driver's license issued to him.

(3) The department shall issue a license required pursuant to this Subsection for a period of one year. When the department issues a license pursuant to this Subsection the license shall be valid for a period of one year from the date of issuance.

(4) Any person to whom this Subsection applies shall personally appear at a motor vehicle field office to renew his driver's license every year, in addition to the yearly reregistration pursuant to R.S. 15:542 et seq. Reregistration shall include the submission of current information to the department and the verification of registration information, including the street address and telephone number of the registrant; name, street address and telephone number of the registrant's employer, and any other registration information that may need to be verified. Upon successful completion of reregistration, the bureau shall electronically transmit this fact to the office of motor vehicles which may then proceed to renew the driver's license. In order to reimburse the office of motor vehicles for the cost of a yearly issuance, the regular renewal fee shall be collected at each renewal pursuant to this Subsection.

(5) The provisions of this Subsection shall apply to all registered sex offenders regardless of the date of conviction.

Further, under La. R.S. § 15:542,

A. The following persons shall be required to register and provide notification as a sex offender or child predator in accordance with the provisions of this Chapter:

(1) Any adult residing in this state who has pled guilty to, has been convicted of, or where adjudication has been deferred or withheld for the perpetration or attempted perpetration of, or any conspiracy to commit either of the following:

(a) A sex offense as defined in R.S. 15:541, with the exception of those convicted of felony carnal knowledge of a juvenile as provided in Subsection F of this Section.

(b) A criminal offense against a victim who is a minor as defined in R.S. 15:541.

(2) Any juvenile who has pled guilty or has been convicted of a sex offense or second degree kidnapping as provided for in Children's Code Article 305 or 857, with the exception of simple or third degree rape but including any

conviction for an offense under the laws of another state, or military, territorial, foreign, tribal, or federal law which is equivalent to the offenses listed herein for which a juvenile would have to register.

(3) Any juvenile, who has attained the age of fourteen years at the time of commission of the offense, who has been adjudicated delinquent based upon the perpetration, attempted perpetration, or conspiracy to commit any of the following offenses:

(a) Aggravated or first degree rape (R.S. 14:42), which shall include those that have been adjudicated delinquent based upon the perpetration, attempted perpetration, or conspiracy to commit aggravated oral sexual battery (formerly R.S. 14:43.4, Repealed by Acts 2001, No. 301, §2) occurring prior to August 15, 2001.

(b) Forcible or second degree rape (R.S. 14:42.1).

(c) Second degree sexual battery (R.S. 14:43.2).

(d) Aggravated kidnapping of a child who has not attained the age of thirteen years (R.S. 14:44).

(e) Second degree kidnapping of a child who has not attained the age of thirteen years (R.S. 14:44.1).

(f) Aggravated crime against nature as defined by R.S. 14:89.1(A)(2) involving circumstances defined by R.S. 15:541 as an "aggravated offense".

(g) Aggravated crime against nature (R.S. 14:89.1(A)(1)).

(h) An offense under the laws of another state, or military, territorial, foreign, tribal, or federal law which is equivalent to the offenses listed in Subparagraphs (a) through (g) of this Paragraph.

The Louisiana Supreme Court has held that La. R.S. § 32:412(I) does not apply to juveniles who are not required to register as sex offenders pursuant to La. R.S. § 15:542 but do so voluntarily as part of a plea agreement:

[Louisiana Revised Statutes § 32:412(I)] expressly appl[ies] to "any person who is required to register as a sex offender *pursuant to R.S. 15:542 and R.S. 15:542.1* " (R.S. 32:412(I)(1) (emphasis added)), and "any person required to register as a sex offender with the Louisiana Bureau of Criminal Identification and Information, *as required by R.S. 15:542, et seq.*," (R.S. 40:1321(J)(1) (emphasis added)). But, as explained above, K.L.A. was not required to register as a sex offender "pursuant

13

to" or "as required by" La. R.S. 15:542. Instead, he agreed to comply with the registration laws in accordance with his plea agreement.

Therefore, under the plain language of the identification provisions, K.L.A. is not required to obtain the special identification requirements set forth in La. R.S. 32:412(I) and La. R.S. 40:1321(J) that designate his status as a sex offender. Because we find the words of the statutes to be clear and unambiguous, no further inquiry is necessary. *See* [*Cat's Meow, Inc. v. City of New Orleans*, 98–0601, p. 15 (La. 10/20/98), 720 So. 2d 1186, 1198].

*State ex rel. K.L.A.*, 2014-1410 (La. 6/30/15), 172 So. 3d 601, 607. However, in holding so, the court made clear that its ruling does not extend to questions similar to the one before this Court:

We decline to answer the broader question presented by this case, *i.e.*, whether a juvenile who is required to register as a sex offender under La. R.S. 15:542 must comply with the requirements of La. R.S. 32:412(I) and La. R.S. 40:1321(J). Because the record of this case supports the conclusion that K.L.A. is not required to register *by law* at all, we find that the broader question is not properly before us.

*Id.*

Five years after its ruling in *State ex rel. K.L.A.*, the court in *State v. Hill* found La. R.S. § 40:1321(J) to be unconstitutional. *See Hill*, 341 So. 3d 539. Similar to La. R.S. § 32:412(I) and also at issue in *State ex rel. K.L.A.*, La. R.S. 40:1321(J) mandated that

[a]ny person required to register as a sex offender with the Louisiana Bureau of Criminal Identification and Information, as required by R.S. 15:542 et seq., shall obtain a special identification card issued by the Department of Public Safety and Corrections which shall contain a restriction code declaring that the holder is a sex offender.

In finding La. R.S. § 40:1321(J) in violation of the First Amendment, the court discussed the difference between compelled speech and government speech. *Hill*, 341 So. 3d at 545–54. The court explained how the First Amendment not only protects citizens' right to speak freely, but also their right not to be compelled to speak. *Id.* at 545. This is often referred to as compelled speech, which is subject to strict scrutiny. *Id.* Conversely, speech by the government is referred to as

government speech, which faces "little to no scrutiny." *Id.* In balancing the compelled speech and

government speech qualities of La. R.S. § 40:1321(J), the court explained:

> [W]e are faced with the question of whether Louisiana's identification [is] more
> like a license plate, which can be a hybrid of compelled and government speech, or
> more like a passport, which at least one federal district court ruled is government
> speech that is immune to the reach of the First Amendment. Defendant clearly
> objects to showing others an identification that reads "SEX OFFENDER" in big
> orange letters because of the social consequences of that message rather than for
> religious or political reasons. The federal district court's opinion in California with
> regard to passports notwithstanding [*Walker v. Texas Division, Sons of Confederate
> Veterans, Inc.*, 576 U.S. 200 (2015)] suggests that if the government compels
> private persons to regularly convey its chosen speech, the government forfeits the
> deference it is normally afforded under the government speech doctrine.
>
> Thus, we find the attempt by the [*Doe v. Kerry*, No. 16-654, 2016 WL 5339804
> (N.D. Cal. Sept. 23, 2016)] court to distinguish the facts of that case from the [*Riley
> v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988)]
> jurisprudence unpersuasive, as *Riley* did not differentiate between statements of
> facts that relate to controversial or political facts, as opposed to simply facts. Like
> in [*Wooley v. Maynard*, 430 U.S. 705 (1977)] where the government-issued license
> plate read "Live Free or Die," the identification card branded with "sex offender"
> is speech. The fact that a license plate was found to be government speech did not
> immunize it from a compelled speech analysis. Thus, even though an identification
> card is government speech, a compelled speech analysis may still be required.
> While *Wooley* involved an ideological statement, *Riley* observed that cases cannot
> be differentiated on whether they turn on compelled statements of opinion or on
> compelled statements of fact. Further, the First Amendment does not turn on
> whether a person is speaking or being forced to speak, rather than remaining silent.
> While no one can force the state to print a certain design on its license plate, like in
> *Walker*, neither can the state force someone to display a particular message on his
> or her license plate either, like in *Wooley*.

*Id.* at 551–52. Finding a compelled speech analysis warranted, the court then analyzed whether La.

R.S. § 40:1321(J) as a content-based regulation can survive strict scrutiny. *Id.* at 553. In holding

that it cannot, the court explained:

> While the state certainly has a compelling interest in protecting the public and
> enabling law enforcement to identify a person as a sex offender, Louisiana has not
> adopted the least restrictive means of doing so. A symbol, code, or a letter
> designation would inform law enforcement that they are dealing with a sex offender
> and thereby reduce the unnecessary disclosure to others during everyday tasks. The
> sex offender registry and notification is available to those who have a need to seek

out that information, while also not unnecessarily requiring disclosing that information to others via a branded identification. As Louisiana has not used the least restrictive means of advancing its otherwise compelling interest, the branded identification requirement is unconstitutional.

*Id.*

### 3. Analysis

      a. <u>Mootness and Defendants' Voluntary Cessation of Enforcing La. R.S. § 32:412(I) Post *State v. Hill*</u>

Louisiana Revised Statutes § 32:412(I) is not moot in light of the Louisiana Supreme Court's ruling in *State v. Hill*. The issue before the court in *State v. Hill* was the constitutionality of La. R.S. 40:1321(J)'s branded identification requirement, not the constitutionality of La. R.S. § 32:412(I)'s branded license requirement. Though the two requirements are similar, without ruling on La. R.S. § 32:412(I)'s branded license requirement, *State v. Hill* did not deem La. R.S. § 32:412(I) unconstitutional.

Defendant is correct in arguing that a voluntary cessation of enforcing a statute can moot a plaintiff's claim. On this issue, the United States Supreme Court has stated the following:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Laidlaw*, 528 U.S. at 189 (internal citations and quotations omitted) (cleaned up). With respect to government defendants, the Fifth Circuit has held that "governmental entities bear a ' "lighter burden" . . . in proving that the challenged conduct will not recur once the suit is dismissed as moot.' " *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 833 (5th Cir. 2023) (first

quoting *Stauffer v. Gearhart*, 741 F.3d 574, 582 (5th Cir. 2014)) (then quoting *Sossamon*, 560 F.3d at 325). In particular, the Fifth Circuit has explained:

> [C]ourts are justified in treating a voluntary governmental cessation of possibly wrongful conduct with some solicitude, mooting cases that might have been allowed to proceed had the defendant not been a public entity—a practice that is reconcilable with *Laidlaw*. Although *Laidlaw* establishes that a defendant has a heavy burden to prove that the challenged conduct will not recur once the suit is dismissed as moot, government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that *formally announced changes* to official governmental policy are not mere litigation posturing.

*Sossamon*, 560 F.3d at 325 (emphasis added). The Fifth Circuit in *Abbott*, 58 F.4th at 833 recently re-emphasized this language from *Sossamon*, holding that "[f]or this reason, and '[w]ithout evidence to the contrary, we assume that *formally announced changes* to official governmental policy are not mere litigation posturing.' " (second alteration in original) (citing *Sossamon*, 560 F.3d at 325) (emphasis added). Thus, the Court reads *Sossamon* and *Abbott* to mean that absent a formal announcement, a government defendant's voluntary cessation of possibly wrongful conduct is not presumed to be done in good faith.

Here, the evidence shows that the voluntary cessation of enforcing La. R.S. § 32:412(I) was never formally announced. The Defendants' Rule 30(b)(6) designee testified:

> Q: 2021, that's when you communicated that you were no longer going to be enforcing [La. R.S. § 32:412(I)]?
>
> A: That is correct. That, I do know someone from the AG's Office contacted—and it could have been the Commissioner—advising that the Court had made the decision that it was unconstitutional, so, therefore, we made the decision at that time to send out—notifying the staff that we would [no] longer be coding credentials as "Sex Offender," actually printing "Sex Offender" on the driver's license or the identification card.
>
> Q: And how did the AG communicate that to OMV?
>
> A: I believe it was a [phone call], but it wasn't to me, so I can't tell you.

17

***

Q: How was it communicated to registrants that they would no longer have to have "Sex Offender" on their driver's license?

A: It's not something that we would ordinarily communicate with registrants about. You know, either it printed on their credential or it didn't. It's not a communication that occurred between staff and the customer.

Q: So were staff instructed to tell the customers they no longer had to have "Sex Offender" on their driver's license?

A: Absolutely not.

Q: And so if somebody came in on January 3rd, 2021, before you stopped enforcing this provision, to get their driver's license renewed, how would they get "Sex Offender" then removed from their license?

A: They would have to return to the field office to have it removed.

Q: How would they know to return to the field office?

A: I have no idea.

Q: Okay. So that's not something that was communicated by OMV?

A: Absolutely not.

Q: So it's possible that people had "Sexual Offender" on their driver's license for almost a year past when they needed to?

A: If it was issued prior to January the 4th, there's a great possibility.

(Deposition of Staci Hoyt, Doc. 119-10 at 9–10.) Since the voluntary cessation of enforcing La. R.S. § 32:412(I) was never formally announced, there is no presumption of good faith to overcome, and Defendant will instead be held to the more stringent standard the Supreme Court set forth in *Laidlaw*. Again,

In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United*

> *States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, 203, 89 S.Ct. 361,
> 21 L.Ed.2d 344 (1968). The "heavy burden of persua[ding]" the court that the
> challenged conduct cannot reasonably be expected to start up again lies with the
> party asserting mootness. *Ibid.*

*Laidlaw*, 528 U.S. at 189 (alteration in original).

Subsequent events have not made it absolutely clear that Defendant will not resume enforcement of La. R.S. § 32:412(I) after this litigation is complete. Namely, the OMV's cessation of enforcing La. R.S. § 32:412(I) was never formally announced and did not begin until January 2021, which was two and a half months after *State v. Hill* was decided and almost a month after this lawsuit was filed. *See* Deposition of Staci Hoyt, Doc. 119-10 at 9–10; *Hill*, 341 So. 3d 539; Doc. 1. Likewise, with Louisiana's recent election of a new Attorney General, it is not absolutely clear that the new Attorney General will continue advising the OMV to enforce the voluntary cessation. With Defendant being the party asserting mootness and the burden therefore being on him, the Court finds that Defendant has not met his "heavy burden" of proof, and accordingly, the Court does not find the voluntary cessation of enforcing La. R.S. § 32:412(I) to moot Plaintiffs' La. R.S. § 32:412(I) claim.

In coming to this conclusion, the Court has considered the Fifth Circuit's recent decision in *Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023). In *Pool*, the Fifth Circuit held that since " 'all parties ha[d] agreed from the beginning of th[e] case that Houston's voter registration provisions governing circulators' [were] unconstitutional[,]" no case or controversy existed, and thus the court lacked jurisdiction to hear the case. *Id.* at 733–34. Accordingly, the court vacated the district court's judgment and remanded the case with instructions to dismiss the suit without prejudice. *Id.* at 734.

It is unclear to this Court whether *Pool* impacts the prior cases relied upon above like *Sossamon* and *Abbott*. However, given that *Pool* was not decided *en banc*, the Court does not read

*Pool* to overrule *Sossamon* and *Abbott*. *See, e.g.*, *United States v. EtchisonBrown*, No. 22-10892, 2023 WL 7381451, at *4 (5th Cir. Nov. 7, 2023) (citing *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 302 (5th Cir. 2018) (alterations adopted) (internal quotations and citation omitted)) ("[W]e follow the well-settled rule of orderliness: Three-judge panels abide by a prior Fifth Circuit decision until the decision is overruled, expressly or implicitly, by either the United States Supreme Court or by the Fifth Circuit sitting en banc."). Instead, the Court reads *Pool* to be specific to the facts at issue in that case and consistent with *Sossamon* and *Abbott*, the latter of which was decided the same year as *Pool*.

b.  <u>Louisiana Revised Statutes § 32:412(I)'s Applicability to Plaintiffs</u>

Finding Plaintiffs' La. R.S. § 32:412(I) claim to be ripe, the Court must next determine whether La. R.S. § 32:412(I) applies to adjudicated juvenile delinquents like Plaintiffs. "When adjudicating claims for which state law provides the rules of decision, we are bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271–72 (5th Cir. 2000) (citing *Transcon. Gas v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). "If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.' " *Id.* (quoting *Transcon. Gas*, 953 F.2d at 988).

While the Louisiana Supreme Court has addressed the issue of La. R.S. § 32:412(I)'s applicability to adjudicated juvenile delinquents in *State ex rel. K.L.A.*, 2014-1410 (La. 6/30/15), 172 So. 3d 601, the Court finds the present case distinguishable from *State ex rel. K.L.A.* because the adjudicated juvenile delinquent in that case was not required by statute to register as a sex offender but did so voluntarily as part of a plea agreement. In *State ex rel. K.L.A.*, the Louisiana Supreme Court did not address the question before the Court today: whether those adjudicated

20

delinquent in juvenile court and required to register as sex offenders under La. § R.S. 15:542 must comply with the requirements of La. § R.S. 32:412(I). *See id.* at 607. Thus, "[o]ur task is to determine as best we can how the Louisiana Supreme Court would decide [this issue]." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850 (5th Cir. 2019) (cleaned up).

Because of Louisiana's civilian tradition, "Louisiana's 'Constitution, codes, and statutes' are of paramount importance to its judges." *Id.* at 851 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)).

> Unlike stare decisis, which can flow from one decision, in the civil system numerous court decisions must agree on a legal issue to establish *jurisprudence constante* (French for constant jurisprudence). And even when that consensus exists in the caselaw, it remains only persuasive authority for the *Erie* guess; "we are not strictly bound" by the decisions of Louisiana's intermediate courts.

*Id.* The Louisiana Supreme Court has laid out the following guidelines for interpreting statutes:

> Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. [*Cat's Meow*, 720 So. 2d at 1198; *La. Safety Ass'n of Timbermen Self–Insurers Fund v. La. Ins. Guar. Ass'n*, 09–0023, p. 8 (La. 6/26/09), 17 So. 3d 350, 355–56. *See also* La. R.S. 24:177(B)(1). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La. R.S. 1:4. The starting point for interpretation of any statute is the language of the statute itself. *See, e.g.*, *Cat's Meow*, [720 So. 2d at 1198]; *Timbermen*, 09–0023, p. 8, 17 So. 3d at 356. Additionally, "all laws pertaining to the same subject matter must be interpreted in *pari materia*, or in reference to each other." *See, e.g.*, *State v. Williams*, 10–1514 (La. 3/15/11), 60 So. 3d 1189, 1191; La. C.C. art. 13. When, on the other hand, a statute is not clear and unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. *See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.*, 10–0193, p. 10 (La. 1/19/11), 56 So.3d 181, 187–88 (quotation omitted). In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*

*Pierce Foundations, Inc. v. Jaroy Const., Inc.*, 2015-0785 (La. 5/3/16), 190 So. 3d 298, 303.

After considering the above-mentioned law and methods of statutory interpretation, the Court finds that La. R.S. § 32:412(I) does apply to adjudicated juvenile delinquents like Plaintiffs. Louisiana Revised Statutes § 32:412(I) applies to those "required to register as a sex offender pursuant to R.S. 15:542 . . . ." The Plaintiffs in this case have been adjudicated delinquent of an offense enumerated in La. R.S. § 15:542(A)(3) and are thus required to registered as sex offenders under La. R.S. § 15:542. Therefore, under the clear language of the statute, Plaintiffs are subject to La. R.S. § 32:412(I).

Plaintiffs argue that La. R.S. § 32:412(I) does not apply to adjudicated juvenile delinquents. Plaintiffs rely on the following language from § 32:412(I)(5): "The provisions of this Subsection shall apply to all registered sex offenders regardless of the date of conviction." (Doc. 119-1 at 6 (citing La. R.S. § 32:412(I)(5)).)  Plaintiffs maintain that, because they have no date of conviction, the statute does not apply to them.

The Court rejects this argument.  Section 32:412(I)'s applicability does not depend on their having been convicted. Rather, La. R.S. § 32:412(I) applies to all registered sex offenders irrespective of any date of conviction. That is, even if Plaintiffs were never convicted (and thus have no date of conviction), Section 32:412(I) is implicated because the statute applies to registered sex offenders—whether they have a conviction or not.

Further, the Court's interpretation of La. R.S. § 32:412(I) does not run afoul of the Louisiana Supreme Court's decision in *State ex rel. K.L.A.* Again, the class of registered sex offenders the Legislature intended La. R.S. § 32:412(I) to apply to are those "*required* to register as a sex offender pursuant to R.S. 15:542 and R.S. 15:542.1[,]" and the plaintiff in *State in Int. of K.L.A* was not required to register as a sex offender but did so voluntarily. Therefore, finding that

La. R.S. § 32:412(I) applies to adjudicated juvenile delinquents like Plaintiffs, the Court must next analyze the constitutionality of La. R.S. § 32:412(I).

c.  <u>Constitutionality of La. R.S. § 32:412(I)</u>

Though *State v. Hill* does not deem La. R.S. § 32:412(I) unconstitutional, for the reasons set forth in *State v. Hill*, La. R.S. § 32:412(I)'s branded license requirement, like La. R.S. § 40:1321(J)'s branded identification requirement, is unconstitutional.

Like La. R.S. § 40:1321(J), La. R.S. § 32:412(I) has qualities of both compelled and government speech. However, as the court in *State v. Hill* explained, when such is the case, a compelled speech analysis may still be warranted. *Hill*, 341 So. 3d at 551–52. Just as a compelled speech analysis was warranted for La. R.S. § 40:1321(J)'s content-based branded identification requirement, the same is warranted for La. R.S. § 32:412(I)'s content-based branded license requirement. Thus, the Court will evaluate La. R.S. § 32:412(I) under the strict scrutiny standard.

Regardless of any compelling interest the state may have, La. R.S. § 32:412(I) cannot survive strict scrutiny under the Louisiana Supreme Court's rationale in *State v. Hill*. Like La. R.S. § 40:1321(J)'s branded identification requirement, in drafting La. R.S. § 32:412(I), the Louisiana Legislature did not use the least restrictive means of carrying out its "compelling interest in protecting the public and enabling law enforcement to identify a person as a sex offender . . . ." *Id.* at 553. Again,

> A symbol, code, or a letter designation would inform law enforcement that they are dealing with a sex offender and thereby reduce the unnecessary disclosure to others during everyday tasks. The sex offender registry and notification is available to those who have a need to seek out that information, while also not unnecessarily requiring disclosing that information to others via a branded identification.

*Id.* Further, Defendant has not shown that the Legislature used the least restive means necessary and instead asserted in briefing that *State v. Hill* made La. R.S. § 32:412(I) unconstitutional, which,

23

as explained above, is inaccurate. Therefore, La. R.S. § 32:412(I)'s content-based branded license requirement is unconstitutional under the First Amendment.

Given that both parties seem to agree, and so does the Court, that *State v. Hill* is extremely relevant to the constitutionality of La. R.S. § 32:412(I), and an analysis under *State v. Hill* reveals that the statute is unconstitutional, the Court grants Plaintiffs' motion with respect to their La. R.S. § 32:412(I) claim.

### B.  Louisiana Revised Statutes § 14:91.5 Claim

Plaintiffs argue that La. R. S. § 14:91.5's lifetime social media ban for registered sex offenders does not apply to adjudicated juvenile delinquents and that Defendant has conceded to such:

> [N]either [SORNA] nor La. R.S. 14:81 and 14:91.5 prohibit registered juvenile delinquent sex offenders from using social media networking websites, engaging in political speech, using internet websites of a governmental entity, using an internet website that has a primary purpose of the dissemination of news, or an internet website that has as its primary purpose the facilitation of commercial transactions involving goods or services between its members or visitors.

(Doc. 119-1 at 11 (alteration in original) (citing Doc. 78 at 12).) However, despite being juvenile delinquents without convictions, Plaintiffs Ruiz and Mounce were convicted of violating La. R.S. § 14:91.5(A)(1), and all other Plaintiffs are restricted from using social media sites. (*Id.* at 11–12.)

Having carefully considered the matter, the Court will grant Plaintiffs' La. R.S. § 14:91.5 claim as waived.  "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)); *see also JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016) (stating that "[t]o avoid waiver, a party must identify relevant legal standards and 'any relevant Fifth Circuit cases' " and holding

that because appellant "fail[ed] to do either with regard to its underlying claims, . . . those claims [were] inadequately briefed and therefore waived." (citing *United States v. Skilling*, 554 F.3d 529, 568 n.63 (5th Cir. 2009) and *United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010) (noting that it is "not enough to merely mention or allude to a legal theory")); *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (defendant's failure to offer any "arguments or explanation . . . is a failure to brief and constitutes waiver.").

"By analogy, failure to brief an argument in the district court waives that argument in that court." *JMCB*, 336 F. Supp. 3d at 634 (quoting *Magee*, 261 F. Supp. 2d at 748 n.10); *see also U.S. ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015) ("This failure to develop the relevant argument effectively represents a waiver of the point." (citing *United States v. Dominguez–Chavez*, 300 F. App'x 312, 313 (5th Cir. 2008) ("Dominguez has failed to adequately raise or develop his due process and equal protection arguments in his appellate brief, and, thus, they are waived."); *El–Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones."))); *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5–6 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

Here, Defendant failed to address Plaintiffs' argument that La. R.S. § 14:91.5 does not apply to adjudicated juvenile delinquents. As a result, the Court will grant Plaintiffs' Motion with respect to their La. R.S. § 14:91.5 claim as waived. *See JMCB*, 336 F. Supp. 3d at 634 (finding that operative complaint could be dismissed because plaintiff failed to respond to the substance of defendant's arguments); *Apollo Energy, LLC v. Certain Underwriters at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.) (finding that policy exclusion could apply because plaintiff failed to oppose insurer's argument on the issue); *see also Wuestenhoefer*, 105 F. Supp. 3d at 672 (finding that relator waived argument as to how certain write-offs fell within a particular provision of the False Claims Act).

Even if Defendant did not waive this argument, the Court would still grant Plaintiff's Motion with respect to their La. R.S. § 14:91.5 claim. This statute applies to those who are required to register as sex offenders and are convicted of one of the sex crimes enumerated in the statute. *See* La. R.S. § 14:91.5(A)(1) ("by a person who is required to register as a sex offender and who was convicted of R.S. 14:81 (indecent behavior with juveniles), R.S. 14:81.1 (pornography involving juveniles), R.S. 14:81.3 (computer-aided solicitation of a minor), or R.S. 14:283 (video voyeurism) or was convicted of a sex offense as defined in R.S. 15:541 in which the victim of the sex offense was a minor."). Again, the Plaintiffs in this case have never been convicted and were instead adjudicated. Thus, as per the clear language of the statute, La. R.S. § 14:91.5 is inapplicable to adjudicated juvenile delinquents like Plaintiffs.

Moreover, although the possible application of *Heck v. Humphrey*, 512 U.S. 477 (1994) could have been raised as an issue to be resolved in this case, it was not and therefore is no bar to granting Plaintiffs' relief here. The Fifth Circuit has held that *Heck* is an affirmative defense rather than a jurisdictional doctrine. *See Colvin v. LeBlanc*, 2 F.4th 494, 498–99 (5th Cir. 2021). Though,

"waivers of defenses based on grounds rooted in considerations of state sovereignty are applied less harshly than other waivers," *see Watson v. New Orleans City*, 275 F.3d 46 (5th Cir. 2001), Defendant in this case has made no effort whatsoever to address *Heck*. Thus, for the reasons stated above, the Court deems this argument waived as well.

### C. Plaintiffs' La. R.S. 40:1321(J) Claim and Defendants Who Do Not Oppose Plaintiffs' Motion

Plaintiffs also move that this Court declare that La. R.S. § 40:1321(J) is unconstitutional and to enjoin the State from enforcing it. Given that *State v. Hill*, 2020-00323 (La. 10/20/20), 341 So. 3d 539 has already declared La. R.S. § 40:1321(J) unconstitutional, Plaintiffs' La. R.S. § 40:1321(J) claim is moot, and thus Plaintiffs' Motion is denied as to this claim.

Plaintiffs also argue that Plaintiffs' Statement of Uncontested Material Facts (Doc. 119-2) should be deemed admitted as to Defendants DOC, LSP, OMV, and BCII since none of these Defendants responded to Plaintiffs' Motion. (Doc. 122 at 1–2.) Since these Defendants did not oppose Plaintiffs' Motion, Plaintiffs' Statement of Uncontested Material Facts (Doc. 119-2) are deemed admitted as to these Defendants. Further, since these Defendants did not oppose Plaintiffs' Motion, this Court's ruling is deemed binding as to these Defendants as well.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that *Plaintiffs' Motion for Partial Summary Judgment*, (Doc. 119), filed by Plaintiffs Aaron Nelson, Robert Ruiz, Shawn Mounce, Jacob Chiasson, and Hunter Calcione is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that as to Plaintiffs' La. R.S. § 32:412(I) claim, *Plaintiffs' Motion for Partial Summary Judgment*, (Doc. 119), is **GRANTED.** Louisiana Revised Statutes § 32:412(I) is declared unconstitutional, and Defendants are enjoined from enforcing this statute.

**IT IS FURTHER ORDERED** that as to Plaintiffs' La. R.S. § 14.91.5 claim, *Plaintiffs'*
*Motion for Partial Summary Judgment*, (Doc. 119), is **GRANTED.** Louisiana Revised Statutes
§ 14.91.5 is declared inapplicable to adjudicated juvenile delinquents, and Defendants are enjoined
from enforcing this statute against adjudicated juvenile delinquents.

**IT IS FURTHER ORDERED** that Plaintiffs' La. R.S. § 40:1321(J) claim is moot and
**DISMISSED WITHOUT PREJUDICE**. Thus, *Plaintiffs' Motion for Partial Summary*
*Judgment*, (Doc. 119), with respect to this issue is **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>February 2, 2024</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**